| 3 | 337 |
| 124 | 236 |
| 3c | 337 |
| 165 | 520 |
| 3c | 337 |
| f166 | 510 |

## SHERMAN and Others *v.* SHERMAN.

Where a mortgage is given to secure the payment of a note, any act which discharges the note, discharges, also, the mortgage.

Where a note has been surrendered by the payee to one of the makers with an intention of canceling it, a delivery of the note by such maker to the payee's administrator, upon his demand, in ignorance of the makers' rights, will not revive the debt.

The surrender of a note by the payee to the maker, is *prima facie* a satisfaction or release of the debt.

A father who had made advancements to his other children, conveyed a tract of land to his sons *A.* and *B.*, taking from them a note and mortgage to operate as a check upon their conduct and not to be collected, intending the land as a gift subject to the support of himself and wife. *A.* and *B.* supported the father and mother during their joint lives,

May Term,
1852.

SHERMAN
v.
SHERMAN.

and about four days before his death, the father delivered the mortgage and note to *B.*, saying that he wished him to keep them till he, the father, and the mother were dead, and then the mortgage would be void. He had often said he did not wish *A.* and *B.* to pay anything for the land, but only to support their parents. *A.* and *B.* had also supported the mother since his death. The note and mortgage were afterwards demanded of *B.* by the father's administrator and delivered up by *B.*, under protest against the rightfulness of the demand and in ignorance of his legal rights; and the administrator filed his bill for the foreclosure of the mortgage. *Held,* that the bill would not lie.

*Thursday,*
*May 27.*

ERROR to the *Jefferson* Circuit Court..

PERKINS, J.—Bill in chancery to foreclose a mortgage. The bill states that, on the 12th day of *January*, 1847, *Daniel* and *Charles B. Sherman* were indebted to *Benoni Sherman* in the sum of 800 dollars, as evidenced by a promissory note of which the following is a copy:

"$800. Two years after date, we, or either of us, promise to pay to *Benoni Sherman*, or order, eight hundred dollars, without relief from valuation or appraisement laws, for value received. *January* 12, 1847. *Daniel Sherman*, *Charles B. Sherman.*"

That, being so indebted, they did, at the date aforesaid, execute to said *Benoni* a mortgage upon certain real estate to secure the payment of said indebtedness, which mortgage was conditioned " that if the said *Daniel* and *Charles B. Sherman* shall well and truly pay, or cause to be paid, unto the said *Benoni Sherman*, their certain promissory note of even date herewith, in favor of the said *Benoni Sherman*, for the sum of eight hundred dollars, without relief from valuation or appraisement laws, due and payable two years from the date hereof, for value received, and according to the tenor and effect thereof, then," &c.

The bill further states that the time fixed for payment has passed, and the money has not been paid; that no proceedings at law have been had for its collection; that said *Benoni* is dead, and *Shedar Sherman*, the plaintiff in the bill, is administrator on his estate. The bill prays a foreclosure, &c.

The defendants answered, admitting the note and mort-

gage, and their non-payment; the death of *Benoni Sher-man*, and the appointment of the plaintiff, *Shedar*, as administrator; but they insist, in defense, that they are not, and never were, bound to pay the demand in question. They say that *Benoni Sherman* was their father; that he deeded to them, as a gift, the tract of land mentioned, but, to secure to himself and wife a maintenance during their several lives, and for no other purpose, he exacted the note and mortgage in suit; that he and his wife were supported by said defendants while said *Benoni* lived, and that his wife is still supported by them. They further say that, a short time before his death, said *Benoni* surrendered said note and mortgage to *Charles B. Sherman*, one of the defendants, to be canceled, but that, after his death, the plaintiff, as administrator, demanded them, and they were, in ignorance of the law and under remonstrance, given up to him.

The usual replication was filed, and depositions were taken. The Court decreed a foreclosure of the mortgage, &c.

It sufficiently appears by the evidence that *Benoni Sherman*, deceased, was the owner of the land covered by said mortgage, and that he deeded it to his two sons, *Daniel* and *Charles B.*, taking back from them, at the time, the note and mortgage in question; that he had previously aided his other children, and that he intended the land conveyed to said *Daniel* and *Charles* as a gift, subject to the support of himself and wife; that he took the note and mortgage as a means of securing that support, and to operate as a check upon the conduct of his sons, and not to be collected; or, as he himself expressed it to one of the witnesses, four days before his death, "he had given to *Charles* and *Daniel* the place and had taken a mortgage for his support," &c., "as *Charles* was a wild, rambling, young man, and he did not know what might happen. But now, as *Charles* had married and settled, he did not hold the mortgage against the place any longer." It further appears that said *Benoni* and wife were supported by his said sons while he lived, and that

his said wife had been since his death; that about four days before his death, being in good health and not contemplating his decease, he delivered said note and mortgage to his son *Charles*, with the remark that " he wished him to keep them till he (*Benoni*) and his wife were dead, and that then they would be void and dead also;" and that he had often said he did not wish his sons to pay anything for the farm, only to support their parents. It also appears that the administrator of said *Benoni's* estate, the plaintiff in the bill, demanded, as his legal right, and obtained from *Charles*, he objecting to the rightfulness of the demand, the possession of said note and mortgage, and instituted this suit for their collection.

We shall not inquire whether the delivery of the note and mortgage in this case can be supported as a *donatio mortis causa;* nor whether the support of *Benoni* and wife constitutes a consideration that will uphold their surrender. There are other principles upon which, in equity, the case can be determined.

" Acts and declarations may amount to what, in the Court of Chancery, will be equivalent to a release of a debt." 2 Spence Eq. 912.

A Court of Equity will order the delivery up and cancellation of instruments, where they are " clearly established by the proofs to have become *functus officio* according to the original intent and understanding of both parties;" and, also, "where it has been fairly inferable from the acts or conduct of the party entitled to the benefit of the deed or other instrument, that he has treated it as released, or otherwise dead in point of effect." 2 Story's Eq. p. 19.

Some of the cases in which these principles have been applied, are as follows:

In *Wekett* v. *Raby*, 2 Bro. P. C. 386, "Mr. *Piggot*, a short time before his death, said to his wife, who was his executrix and residuary legatee, he had *Raby's* bond which he did not deliver up as he might live to want it, but added, ' when I die he shall have it, he shall not be troubled or asked about it.' On the death of Mr. *Piggot*,

*Raby* asked the widow to give up the bond, on which she did not deny that the directions had been given to her, and told *Raby* he might be easy, for it was safe in her hands, and that if she married she would give it up to him. Lord *Macclesfield*, and afterwards the House of Lords, held that the executrix, who had married and sought to put the bond in suit, was trustee of the bond for *Raby*, and she was ordered to deliver it up. In *Richard* v. *Syms*, 2 Eq. Ca. Abr. 617; S. C. Barnard, p. 90, the facts appear to have been that the mortgagee said to the mortgagor, 'Take back your writings,' namely, a mortgage and bond, 'I freely forgive you the debt;' the mortgagor accordingly took them, and it was alleged the mortgagee at the same time made a verbal statement to the mother of the mortgagor, to the effect that he had intended to forgive the debt. Lord *Hardwicke* considered that, by the parol declaration, if proved, the debt would be extinguished, and that the heir of the mortgagee would become, by construction of law, trustee for the mortgagor." 2 Spence, 912, n. (*b*.) So, in *Flower* v. *Marten*, 2 Mylne and Craig, 474, " where a father, upon payment of the debts of his son, took a bond from the latter, and it was apparent, from all the circumstances, that the father did not intend it as an absolute security against the son, but in some sort as a check upon his future conduct, and that he did not intend, after his death, that it should be treated as a debt due from his son to his estate, or to be put in force against him; it was decreed that the bond should be delivered up by the executors to be cancelled." 2 Story, *supra*, p. 20.

Here are two classes of cases in which equity will decree the delivery up of instruments, the evidences of debt: 1. Where they were not intended, originally, to be enforced; 2. Where they were intended, originally, to be enforced, but that intention has been finally abandoned. The case under consideration falls within both these classes. In it, we may remark, the mortgage was but a security for the note, and any act that discharged the lat-

ter, discharged the former. The note had been actually surrendered up to one of the makers; and we shall treat it as though it had never been returned to the administrator of the payee, for it was done in ignorance of the rights of the party, and without intending to relinquish any he might have, and without the consent of the joint maker; and such a return will not revive an extinguished debt nor change the liabilities of the parties in this suit. The surrender of a note is, *prima facie*, a satisfaction or relinquishment of the debt evidenced by the note. And, in the present case, all the facts go to show that the note was surrendered with a view to the relinquishment of what was, indeed, a legal demand, but one never intended to be enforced; and, also, with a view to prevent its being collected, on the decease of the payee, as a part of his estate for the benefit of his heirs. Of this there can be no doubt; and we think, on the authority of the cases cited, it is the duty of a Court of Equity to enjoin its collection for such a purpose. It is true the defendant, *Charles*, was not directed immediately to destroy the note; but the unqualified possession was given to him to continue till, on the happening of a future, but certain event, the note should become "void" and "dead," without payment; till, in short, it should "become *functus officio*, according to the original intent and understanding of both parties."

Suppose this had been a suit to compel the re-delivery of this note from *Charles B. Sherman* to *Benoni's* administrator, would it have been sustained on the facts now appearing in the record? If not, then, the present suit should not be. It will be observed that this bill is not in behalf of the widow to secure a support for her. She is not complaining; and when she does complain it will be time enough to ascertain what can be done for her. This bill is to collect the note in question for the benefit of all *Benoni's* heirs, a part of whom, he intended, should not have any of it; and, if successful, would destroy the claim of the widow to future support, as well

as deprive the defendants of their reward for the support they have given. We think the decree below should be reversed.

*Per Curiam.*—The decree is reversed, with costs. Cause remanded, &c.

*J. Sullivan*, for the plaintiffs.

*J. G. Marshall*, for the defendant.