Daugherty, Administrator, v. Rogers.

No. 13,416.

DAUGHERTY, ADMINISTRATOR, v. ROGERS.

WILL.—*Interpretation.*—*Intention.*—Whatever method may be resorted to for the interpretation of a will, it must be applied solely with a view to arrive at the intention of the testator, as his intention may be gathered from the language found in the instrument itself.

SAME.—*Latent Ambiguity.*—A latent ambiguity, which will justify the admission of evidence of extrinsic facts, is one which may arise, not upon the face of the will itself, but from facts therein referred to, which are extrinsic to the instrument.

SAME.—*Evidence.*—*Extrinsic Facts.*—Whenever, in applying a will to the objects or subjects therein referred to, extrinsic facts appear which produce a latent ambiguity, the court may inquire into every other material extrinsic fact or circumstance to which the will refers, and to the relation which the testator occupied to those facts, in order to arrive at a correct interpretation of the language actually employed.

SAME.—*Presumption that Words are Used in Primary Sense.*—*When Contrary May be Shown.*—A testator is presumed to have used the words in which he expressed his intentions according to their strict and primary acceptation, and if, when applied to the extrinsic facts referred to, they are sensible, parol evidence is not admissible to show that they were used in some other sense; but it is otherwise if the words, in their strict and primary sense, are meaningless when applied to such extrinsic facts.

SAME.—*Notes Executed by Legatee to Testator.*—*When Discharged.*—*Ambiguity.* —*Extrinsic Evidence.*—A testator bequeathed "to Philo Rogers, the young man I raised, in addition to what I have already given him, the further sum of five hundred dollars." At the time the will was executed the testator held six notes against Rogers, aggregating six thousand dollars. Upon his death they were found among his assets, and suit was brought thereon by his administrator against Rogers. The defendant answered that he had been reared in the family of the testator, who was a man of fortune, and who had often expressed an intention to make liberal provision for the defendant; that the testator had, prior to the execution of the will, advanced money to the defendant in anticipation of the testamentary provision which he intended to make for him, taking the notes in suit merely as memoranda of the amounts and dates; that no other money or property had ever been given to him by the testator; that the words " in addition to what I have already given him," employed in the will, had reference to the money represented by the notes, and that the will released and extinguished such notes.

Daugherty, Administrator, *v.* Rogers.

*Held*, that evidence to sustain the answer, including declarations made by the testator, was admissible, a latent ambiguity being developed by the extrinsic facts referred to in the will, and that, upon proof of the facts alleged, a judgment for the defendant was proper.

*Held*, also, that as the word "given," used in the will, if taken in its strict and primary sense, is meaningless when applied to the extrinsic facts referred to, it was competent to show that it was used in the secondary sense of "furnished" or "supplied."

BERKSHIRE, J., and OLDS, J., dissent.

From the Allen Superior Court.

*E. R. Wilson, J. J. Todd, J. Morris* and *J. M. Barrett,* for appellant.

*R. S. Taylor,* for appellee.

MITCHELL, J.—The last will and testament of Amos Curry, late of Wells county, deceased, was admitted to probate on the 23d day of September, 1885. Among other provisions, it contained the following :

" ITEM 10. I will, devise and bequeath to Philo Rogers, the young man I raised, in addition to what I have already given him, the further sum of five hundred dollars."

At the time the will was executed the testator held six notes against Philo Rogers, the legatee above named, calling for the payment of sums aggregating about six thousand dollars. These notes were found among the assets left by the testator at his death—the interest having been regularly paid—and the administrator, with the will annexed, instituted suit upon them, alleging that they were executed in consideration of money loaned to the defendant by the testator in his lifetime, and that they remained unpaid.

The defendant answered, in substance, that he had been taken into the testator's family and reared by him from tender infancy, substantially as a son, and that the relations between him and the testator were those of the closest intimacy and affection, and so continued until the death of the latter. It is averred that the testator was a man of fortune, his estate being of the value of $80,000, and that his often-expressed

intention was to make a liberal provision for the defendant out of his estate, in pursuance of which he had advanced to the latter, from time to time, divers sums of money in anticipation of the testamentary provision which he intended finally to make for him, taking notes for the sums so advanced, as memoranda of the amounts and dates of the advancements, which notes so taken were the identical ones mentioned in the complaint. It is averred further, that, at the date of the execution of the will, the testator had given him no other money or property except the several sums represented by the notes in suit, and that the words " in addition to what I have already given him," employed by the testator in the tenth item of his will, above set out, had reference to the money represented by the notes mentioned in the complaint, and that the will operated, and was intended to operate, as a release and extinguishment of the notes.

Issues were formed by a reply, and the case was tried and a judgment rendered for the defendant upon proof tending to support the theory foreshadowed by the answers.

Various incidental questions are presented, but the decision of the case upon its merits depends upon whether or not the court ruled correctly in admitting evidence to sustain the answers.

The will of Amos Curry was admitted in evidence, as was also extrinsic testimony tending to show that the testator had never, prior to the execution of the will, or since, given the defendant any money or other property except the money represented by the notes in question. Numerous declarations made by the testator, tending to show that he entertained a high regard for the defendant, were also admitted in evidence, as were also declarations to the effect that he had furnished the defendant money with which to engage in business, and had taken notes for it, but that he did not intend that the notes should ever be paid, that he intended to give the amounts so furnished to the defendant. Evidence such as the foregoing, together with testimony showing the rela-

Daugherty, Administrator, *v.* Rogers.

tions existing between the defendant and the testator, comprised substantially all the evidence in the case, and whether the judgment of the court below shall be affirmed or reversed depends upon whether or not it was competent to arrive at the intention of the testator, as that intention was expressed in the words found in the will, by the aid of extrinsic evidence.

The argument on the appellant's behalf is to the effect that there is no ambiguity apparent upon the face or in the language of the will; that the instrument itself excludes the idea that the testator intended, by its terms, to give the appellee anything in addition to the five hundred dollars therein bequeathed to him; and that any testimony which tended in any degree to impute to the testator a different intention was contradictory of the will, and was therefore incompetent. Moreover, it is contended that there is no ambiguity in the language of the will, either as respects the person intended or the subject-matter of the bequest, and that hence extrinsic evidence was not admissible.

It is settled beyond controversy that whatever method may be resorted to for the interpretation of a will, it must be applied solely with a view to arrive at the intention of the testator, as his intention may be gathered from the language found in the instrument itself. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution. *Pugh* v. *Pugh,* 105 Ind. 552; *Judy* v. *Gilbert,* 77 Ind. 96; *Funk* v. *Davis,* 103 Ind. 281; *Pocock* v. *Redinger,* 108 Ind. 573; *Worman* v. *Teagarden,* 2 Ohio St. 380; 1 Jarman Wills, pp. 711, 726; 2 Pom. Eq. Jur., section 1036.

The maintenance of this rule in its integrity, so that the language found in the instrument shall in truth be the legal declaration of the testator's intentions concerning the dis-

position to be made of his property after his death, is a matter of transcendent importance, and, as will be seen from the cases cited, in no jurisdiction has the doctrine which denies the right to add anything to a will by parol been adhered to more steadily than by this court.

It does not follow that the law will suffer the manifest purpose of the testator to fail, because he may not have described the objects of his bounty or the subjects disposed of with such accuracy or completeness as that they may always, and with certainty, be identified by the language of the will, without more, or because he may have expressed his intention in an elliptical manner, and without going into such minute detail as to preclude the necessity of inquiry concerning his circumstances, situation and surroundings at the time the will was written, in order to enable the court to understand the meaning and application of the language employed. Nor is it correct to say that because the language employed is in itself intelligent and free from obscurity, extraneous evidence may not be legitimately resorted to in order to place the court which expounds the will in the situation of the testator who made it. " The law is not so unreasonable as to deny to the reader of any instrument the same light which the writer enjoyed." Wigram Wills, p. 161; Gilmer v. Stone, 120 U. S. 586.

It has been said, with what we conceive to be commendable accuracy, that " The points of inquiry under a will may, for general purposes, be classed under three heads :—1. The person intended. 2. The thing intended. And, 3. The intention of the testator with respect to each of them." Wigram Wills, p. 263, note. It may often happen that persons or things, or the intention of the testator respecting them, may seem to be sufficiently defined by the terms of the will, and yet when the language employed, and the facts to which it refers, are brought in contact with each other, the language and the facts are so inharmonious as to leave the intention of the testator obscure. Thus an ambiguity arises, not upon the

face of the will itself, but from facts therein referred to which are extrinsic to the instrument. This, according to the maxim of Lord Bacon, constitutes the very essence of a latent ambiguity, which he defines to be " that which seemeth certain and without ambiguity for anything that appeareth on the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity." *Hawkins* v. *Garland*, 76 Va. 149 (44 Am. Rep. 158).

"An ambiguity which arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe," is a latent ambiguity. 1 Am. and Eng. Encyc. of Law, p. 530, and note.

Whenever, therefore, in applying a will to the objects or subjects therein referred to, extrinsic facts appear which produce or develop a latent ambiguity, not apparent upon the face of the will itself, since the ambiguity is disclosed by the introduction of extrinsic facts, the court may inquire into every other material extrinsic fact or circumstance to which the will certainly refers, as well as to the relation occupied by the testator to those facts, to the end that a correct interpretation of the language actually employed by the testator in his will may be arrived at. *Skinner* v. *Harrison Tp.*, 116 Ind. 139 ; *Black* v. *Richards*, 95 Ind. 184; *Cruse* v. *Cunningham*, 79 Ind. 402 ; *Patch* v. *White*, 117 U. S. 210 ; *Atkinson* v. *Cummins*, 9 How. 478; *Chambers* v. *Watson*, 60 Iowa, 339 (46 Am. R. 70) ; *Powell* v. *Biddle*, 2 Dallas, 70 (1 Am. Dec. 263) ; *Connolly* v. *Pardon*, 1 Paige Ch. 291 (19 Am. Dec. 433) ; *Pickering* v. *Pickering*, 50 N. H. 349 ; *Tilton* v. *Society*, 60 N. H. 377 ; *Hinckley* v. *Thatcher*, 139 Mass. 477 (52 Am. R. 719) ; *Morgan* v. *Burrows*, 45 Wis. 211 ; *Miller* v. *Travers*, 8 Bing. 244 ; *Hiscocks* v. *Hiscocks*, 5 M. & W. 362 ; Wigram Wills, p. 142.

" In all cases," said TINDAL, Chief Justice, " in which a difficulty arises in applying the words of a will to the thing which is the subject-matter of the devise * * * , the diffi-

culty or ambiguity which is introduced by the admission of extrinsic evidence, may be rebutted and removed by the production of further evidence, upon the same subject, calculated to explain what was the estate or subject-matter really intended to be devised." *Miller* v. *Travers, supra ;  Baugh* v. *Read,* 1 Ves. Jr. 257. It is therefore a fundamental error to assume that a latent ambiguity, such as will justify the admission of evidence of extrinsic facts, can only arise out of some obscurity in the terms employed in the will.

The purpose for which extrinsic evidence may be legitimately admitted is not to add to or vary, or ordinarily to explain, the literal meaning of the terms of the will, or to give effect to what may be supposed to have been the unexpressed intention of the testator, but to connect the instrument with the extrinsic facts therein referred to, and to place the court, as nearly as may be, in the situation occupied by the testator, so that his intention may be determined from the language of the instrument, as it is explained by the extrinsic facts and circumstances. *Greenpoint Sugar Co.* v. *Whitin,* 69 N. Y. 328, 336, and cases cited.

Another rule, of equal importance to that above remarked upon, is to be kept in view, and that is, that while a testator is always presumed to have used the words in which he has expressed his intentions, according to their strict and primary acceptation, so that when there is nothing in the context to show a different purpose, and when the words so interpreted are sensible when applied to the extrinsic facts to which they refer, parol evidence will not be admitted to show that the words were used in some other or popular sense ; but if to give the words employed their strict, primary meaning renders the will insensible, or unmeaning, with reference to extrinsic facts and circumstances, courts will then look into all the extrinsic circumstances that surrounded the testator at the time, to see whether the language of the will can be rendered sensible with reference to those circumstances by giving the words used some other proper but secondary mean-

Daugherty, Administrator, *v.* Rogers.

ing. Wigram Wills, p. 100. This rule finds illustration in a great variety of cases, both American and English. *Gill* v. *Shelley*, 2 Rus. & M. 336 ; *Dover* v. *Alexander*, 2 Hare, 275; *Radcliffe* v. *Buckley*, 10 Ves. Jr. 195 ; *Gardner* v. *Heyer*, 2 Paige Ch. 11.

Thus, where a devise was to the children of the testator, upon inquiry it was disclosed that he had no children, but there were other persons concerning whom he had always, or habitually, spoken as his children, and it was held that they were the persons intended.

This brings us to a point where the general principles above stated may be applied to the case under consideration. Looking at the will, it is at once apparent that the object of the testator's bounty, so far as the subjects here involved are concerned, is the young man he had raised ; that primarily the subject of disposition was the further sum of five hundred dollars, and that the intention of the testator respecting the object and subject was, that the young man he had raised should receive a legacy of five hundred dollars, in addition to what he had theretofore given him. In effect the testator declares by his will that, at some time prior to the date of its execution, he had given Philo Rogers money or property, to which his purpose was to add the further sum of five hundred dollars as a legacy. The implication that he had theretofore given the legatee a sum of money, or some other valuable property, is as plain and irresistible as is the declaration that a further sum was to be added to that already given. As is in effect said in *Parker* v. *Tootal*, 11 H. L. Cas. 143, implication may arise from a form of expression which necessarily implies something else, or from a form of gift which can not be rendered effectual without implying something else. The present, in our opinion, affords an apt example of such a case.

The strict and primary signification of the word " give," is to bestow, to confer or grant, usually without any price or reward, as a donation or gratuity, or, as is said in *John-*

*ston* v. *Griest*, 85 Ind. 503, while tho word does not invariably indicate an intention to make a gift, that is its usual signification.   Attributing to the word its strict and primary meaning, it is disclosed, when the language of the will and the facts therein referred to are brought together, that the language and the facts are insensible and without meaning.   The testator, in that sense, had given nothing to the legatee.   There was, therefore, an entire want of correspondence between the facts recited and those which actually existed when the will was executed, unless the money to which the further sum of five hundred dollars was to be added was the very money represented by the notes which the administrator is seeking to collect.   It is apparent, therefore, that the testator either meant nothing by the implication contained in his will that he had theretofore given the legatee an indefinite sum of money, or some other indefinite thing, or he intended to use the word "given" in a secondary sense.   A secondary, but entirely proper, meaning of the word "give" is, "to supply, to furnish with, to afford." Encyclop. Dict. ; Anderson Law Dict.   Accordingly, it has been held, where a statute made it a misdemeanor to give intoxicating liquor to a minor, that the word "give" was synonymous with "furnish," or "supply," and that the defendant was properly convicted, even though he had sold the liquor to the minor. *Commonwealth* v. *Davis*, 12 Bush, 240 ; *Holley* v. *State*, 14 Tex. App. 505 ; *Parkinson* v. *State*, 14 Md. 184.

A latent ambiguity having been disclosed by extrinsic evidence concerning facts referred to in the will itself, upon every principle of right reason, as well as upon an unbroken line of authorities, extrinsic evidence was admissible for the purpose of ascertaining whether a state of facts existed at the time the will was written which corresponded with the words used, by attributing to them a secondary meaning. Upon inquiring into the situation and surroundings of the testator, it was ascertained that his relations with the defendant were substantially such as they were alleged to be in the

answer; that the money represented by the notes had been furnished or supplied to the defendant by the testator prior to the making of the will, for the purpose of enabling the former to embark in business, and that the testator had often declared that he never intended to require it to be repaid.

It is thus found that by ascribing to the word "given" one of its recognized and fully accepted definitions, and treating it as having been used as synonymous with "furnished" or "supplied," all the apparent discord between the language of the will and the extrinsic facts therein referred ·to disappear. Upon what rule of construction shall the court refuse to do this? Can it be doubted that the intention of the testator was to have his will, and the facts therein referred to, in accord? And if that was his intention, why should it not be given effect, when it can be done consistent with reason and upon well settled principles of interpretation? The purpose and effect of the evidence admitted was neither to vary the terms of the will nor to add anything to it, so as to arrive at an intention not expressed in the will, but to harmonize the language used with the facts referred to, and thus arrive at the testator's intention as expressed in the will.

It is argued in favor of a reversal, that the will must be regarded as operative to bestow a legacy of five hundred dollars and no more, and that it was hence wholly immaterial what the testator had given the defendant theretofore, since in no event could the amount be enlarged or diminished by the reference to what had theretofore been given. There would be force in this suggestion if the phrase "in addition to what I have already given him" had, and could have, reference to a donation, and was confined to a perfectly executed gift, and nothing else. But, as we have seen, the language is not to be thus interpreted, in view of the circumstances under which it was used. If the will read, "I give * * to Philo Rogers, * * in addition to what I have already furnished or supplied him, the further sum of five

hundred dollars," it would hardly be denied but that it might have been shown that the money theretofore furnished the legatee by the testator, even though by way of loans or unexecuted gifts, was that referred to in the will. As we have seen, no violence is done to correct speech to thus read it. Besides, this reading unlocks the meaning of the testator, and makes the will and the facts consistent. An imperfect gift, or even a loan, may be turned into an executed gift or advancement by will, if the intention of the testator to do so satisfactorily appears. *Darne* v. *Lloyd*, 82 Va. 859 (3 Am. St. R. 123).

The testator did not stand *in loco parentis* to the defendant, upon whom he desired to bestow a portion of his estate, and there was, therefore, no presumption that the money previously given him was in the nature of an advancement, given by way of anticipation of the whole or a part of what might be coming to him at the testator's death. *Ruch* v. *Biery*, 110 Ind. 444. Because, in no event, could he participate in the testator's property except pursuant to the will. The presumption that a sum of money given is an advancement obtains only between those who occupy the relation of parent and child, or relations kindred thereto. In the absence of the will it would not have been competent to defeat the collection of the notes, which were given in consideration of money received, by proving subsequent declarations made by the testator to the effect that he had given the defendant the money to start him in business, and that he did not intend to collect it. *Denman* v. *McMahin*, 37 Ind. 241. Thus, where it appeared that a stepmother held a note against her stepson, who had tendered payment to her, which she refused to accept, declaring, in the presence of witnesses, that the payee had made the money for her, and that she never intended to collect it, and that if it was not paid in her lifetime the note was to be surrendered up, it was held that these declarations were simply evidence of an unexecuted intention to give, and not of an executed gift. *McGuire* v.

*Adams*, 8 Pa. St. 286. Applying the principle declared to the present case, then it follows that it was essential, in order to carry into execution the declared purpose of the testator, that the transactions, which had borne the semblance of loans, but which he intended to convert into gifts, should be controlled by his last will and testament. Hence the bequest of five hundred dollars in addition to what he had already given the boy he had raised, in the manner described. The will operated as effectually upon that which had already been given imperfectly, as upon the five hundred dollars. At this point the present case is parallel in principle with *Jordan* v. *Fortescue*, 10 Beav. 259, in which it appeared that the testator, in the third codicil to his will, expressed himself as follows : " I give and bequeath to William Jordan 500*l.*, in addition to 1,500*l.* which I have before bequeathed to him." The testator had, in fact, only bequeathed £1,000 to the legatee. It was contended there, as it is here, that the bequest was for £500, and no more. It was held, however, that the sum given in the codicil was given with reference to the amount supposed to have been previously given, and that the effect of the codicil was to entitle the legatee to the full amount of the sums therein named. That the mistake appeared in the previous will in the case cited, in nowise distinguishes that case from the one under consideration, so far as it relates to the force and effect of the instrument. As the effect of the codicil was not only to entitle the legatee to the sum mentioned therein, but also to the sum to which it was supposed to be additional, so the will in the present case is effectual to give not only the five hundred dollars mentioned, but the sum which it must be assumed, in the light of all the facts disclosed, the testator knew he had already imperfectly given, to which the sum mentioned was to be added. The answer of the jury, that the notes were discharged or released by the terms of the will, was, therefore, consistent with the facts, and with the theory upon which the defendant's case proceeded.

In respect to another interesting feature of the case, which has been presented for consideration, it is only necessary to say, in conclusion, that while there may be some doubt whether or not a legacy given by a creditor to his debtor will, of itself, afford the basis of a presumption that the debt is thereby satisfied, so as to justify the admission of extrinsic evidence, yet, where language contained in the will can only be made consistent with the facts to which it refers, upon the theory that the testator intended the legacy as an additional or cumulative gratuity, the authorities all agree that parol evidence may be heard, showing the manner in which the testator treated and talked of the debt, so as to apply the language of the will to the facts in question, to the end that the real meaning of the language may be ascertained. *Tillotson* v. *Race*, 22 N. Y. 122; *Zeigler* v. *Eckert*, 6 Pa. St. 13 (47 Am. Dec. 428). The present case comes within the control of that principle.

The mere fact that a pecuniary legacy is given by a creditor to his debtor was held to be a circumstance entitled to weight in determining whether or not a previous clause in a will, by which the testator in terms released two mortgages on the legatee's property, included a third mortgage not mentioned in the will. *Cleveland* v. *Carson*, 37 N. J. Eq. 377.

In respect to this last subject we decide nothing at present. There was no error affecting the substantial merits of the case. The judgment is therefore affirmed, with costs.

Filed April 6, 1889; petition for a rehearing overruled June 5, 1889.

## DISSENTING OPINION.

BERKSHIRE, J.—I am unable to agree with the conclusion reached by the majority of the court. To me the conclusion seems to be unsound on principle, and contrary to a long line of decisions by this court, beginning with its organization and coming down to the present time. Feeling the importance of the questions involved, I regret that I have not the time to express my views at length.

The action was brought upon certain promissory notes executed by the appellee to the decedent in his lifetime. The theory of the defence is not that the notes were executed without consideration, and merely as the evidence of an advancement, so as to bring it within the case of *Peabody* v. *Peabody*, 59 Ind. 556, nor is it the theory of the defence that the notes were surrendered and the indebtedness released and forgiven, so as to bring it within the case of *Sherman* v. *Sherman*, 3 Ind. 337. The theory of the defence is that the decedent, who died testate, by his last will and testament bequeathed the notes in suit and the indebtedness which they evidenced to the appellee. The only item in the will under which this claim is made is item No. 10. It reads thus: " I give, devise and bequeath to Philo Rogers, the young man I raised, in addition to what I have already given him, the further sum of five hundred dollars."

The language is not only not ambiguous, but it is clear and unequivocal. What is it that is given to the appellee? The sum of five hundred dollars. In addition to what is five hundred dollars given? *"In addition to what I have already given him."* The will only purports to give the appellee five hundred dollars. It is not claimed that the language has the effect to give him more. What kind of a gift is referred to? Evidently a complete and perfect gift. There can be no gift unless there is an intention to give, and, pursuant to the intention, the control and possession of the thing given are parted with by the donor. The thing given and referred to in the will being something, the control and possession of which the testator had parted with before the execution of the will, it could not have been the notes in suit, nor the indebtedness of which they were the evidence.

It is not claimed that the notes were given by the testator in his lifetime to the appellee. The testator did not part with the notes, but held them as a valid and subsisting indebtedness at the time of his death. The words " in addition to what I have already given him," evidently refer to some-

thing else. If the notes in suit are not what was referred to, then the will must be construed without reference thereto. Giving the will the construction that its language imports, and the only construction which it seems to me can be given to it, and but five hundred dollars is bequeathed to the appellee. If the debt had been forgiven or released by the testator in his lifetime (which is not claimed), then that should have been the defence, and not that it passed by the will.

To permit parol evidence for the purpose of showing that the notes passed by the will, in addition to the five hundred dollars, is simply to enlarge the terms of the will, and give to the appellee several thousand dollars more than the will gives him. In other words, the will which the testator made is, by parol evidence, transformed into a new and different will; that is to say, the will as made by the testator gave to the appellee five hundred dollars, but as made by parol evidence for the testator, and after his death, several thousand dollars. If the will of the testator here under consideration can be thus changed, in my judgment any other like instrument may be so changed, and if this rule is to be applied to wills, then why not to all other written instruments?

I can not yield my assent to what I consider a new and dangerous departure from the well settled rule of law, everywhere prevailing, that parol evidence can not be introduced to change, alter or vary the terms of a written instrument.

OLDS, J., concurs.

Filed April 6, 1889.