ANTIBUS v. HART, TRUSTEE, ETC., ET AL.

[No. 18,704. Filed August 2, 1956.]

*Shake & Shake,* of Vincennes, for appellant.

*Arthur L. Hart,* of Vincennes, for appellees.

ROYSE, J.—The parties hereto sought a construction and declaratory judgment of the last will and testament of Robert E. Trout and the trust thereby created. The provision of the will which is the subject of this action is as follows:

"All the balance and remainder of my property of every kind and character, both real and personal which I own at the time of my death, I will, devise and bequeath to Arthur L. Hart, as Trustee and in trust on the following terms and conditions:

(a) Said Trustee shall have full power in his discretion to lease from time to time any and all real estate which I own for oil or gas.

(b) Said Trustee shall have full power and authority to manage, rent, lease and improve any and all real estate held by him as Trustee at his discretion.

(c) Said Trustee shall have full power and authority to invest, re-invest, change and alter investments of personal property held by him as Trustee at his sole discretion.

(d) Said Trustee, after the payment of taxes and all other expenses incurred in the management and operation of said trust and trust property, shall annually divide the proceeds therefrom, after retaining a reasonable sum for depreciation and current operating expenses of the trust to the following beneficiaries in the following shares and proportions, to-wit:

One-third (⅓) to be equally divided between Catherine Antibus and Arthur L. Trout and their surviving descendants per stirpes;

One-third (⅓) to be equally divided between Cecil Chambers, Bertha Hollingsworth, Frank

Chambers and William T. Chambers and their surviving descendants per stirpes;

One-third (⅓) to be equally divided among the children and their surviving descendants per stirpes of my deceased sister, Catherine S. Trout Robertson.

(e) This trust shall terminate upon the death of the last surviving beneficiary now living; providing, however, this trust shall terminate in any event not later than the termination of a certain lease which I have executed with Albert Mooney covering real estate which I own in Knox County, Indiana.

(f) Upon the termination of said trust said Trustee herein is fully authorized and directed to offer all the assets of said trust, including the real estate but excepting cash, for sale upon such terms, conditions, and notice as may be fixed by the Knox Circuit Court and totally liquidate said trust, and upon said liquidation, said Trustee shall pay and distribute under the order of the Court all the proceeds and trust fund to the then living beneficiaries designated and named above."

By her complaint appellant sought an interpretation and meaning of said will and her rights therein in the following particulars:

(a) When was the lease executed as referred to in the Will?

(b) Was there a sufficient description of the lease referred to in the Will so that the same can be identified?

(c) Can a separate instrument become a part of a Will by reference only?

(d) What interest does the affiant have in the trust under the terms of the Will?

(e) Under the following provision of the Will, "One-third to be equally divided between Katharine Antibus and Arthur L. Trout and their surviving descendants per stirpes," does plaintiff take a life interest or absolute title or as tenants in common with her descendants?

(f) What is the meaning of the word "descendants" as used in said provision of the Will quoted?

(g) Does that part of the Will as quoted in No. (E) violate the law of perpetuity?

(h) Under the following provision, "This trust shall terminate upon the death of the last surviving beneficiary now living," and should Arthur L. Trout precede plaintiff in death, would said trust terminate as to plaintiff's interest in said trust?

(i) If the lease is not properly identified by reference, when does the trust terminate?

(j) If said lease was properly identified and was in existence at the time of the writing of the Will and after the Will was written said lease was terminated by the testator, does the trust estate terminate at the time of the termination of the lease referred to by reference in the Will?

To that complaint appellees filed their answer in two paragraphs. The first was an answer of admission, denial and lack of information under the Rules.

The second averred, in substance, that testator's will was executed July 20, 1946; that at said time there was in existence and in force and effect a lease of certain real estate wherein testator was lessor and Albert Mooney was lessee; that this lease was dated April 20, 1946 and ran to the 20th day of April, 1966; that appellee Hart qualified as executor of said estate on June 21, 1947 and administered said estate which was finally settled and determined on July 1, 1948, at which time all remaining assets were delivered to said appellee pursuant to the terms of said will and he has ever since discharged his duties as such trustee; that appellant and all of the parties to this action were aware of the existence of said trust, its management and operation; that said beneficiaries each year in writing waived

notice of the hearing on said trustee's report; that each has, during the many years operation of said trust, accepted their respective distributions and executed their written receipts therefor and they have thereby recognized the validity of said trust, etc., and are estopped to deny its existence and validity.

Appellant filed her reply denying an estoppel.

Appellees filed a counter-claim against appellant. It, in substance, averred the execution and recording of the lease of April 20, 1946 between testator and Mooney, which said lease was made a part of the counter-claim; the execution of testator's will on July 20, 1946 while the lease of April 20, 1946 was in full force and effect. It then avers, in part, as follows:

> "That thereafter, to wit, on the 2nd day of August, 1946, said Robert E. Trout and said Albert Mooney by written agreement cancelled said lease dated April 20, 1946, and entered into a new lease covering said Trout's lands in Knox County, Indiana, covering the period from August 2, 1946 to August 1, 1956, unless sooner ended upon the happening of certain events, a copy of which lease is attached hereto, made a part hereof by reference and marked "Exhibit Y"; that said lease was recorded on the 3rd day of August, 1946, in Miscellaneous Record 60, page 154 of the Recorder's office of Knox County, Indiana."*

It is then averred that testator died on June 19, 1947; that appellee Hart was appointed and qualified as executor of said estate and on approval of his final report as such executor he, as trustee, received the property of said estate; that appellant was aware of these facts and did not object to said trust or its operation. It is then averred:

> "that plaintiff yearly in writing waived notice of hearing on the trustee's current report and con-

_____
* The parties stipulated these allegations were true.

sented to the court acting thereon; that such waivers and consents were so executed for the years 1948, 1949, 1950, 1951 and 1952; that plaintiff yearly from 1948 to 1952, both dates inclusive, accepted her respective distribution from said trust, and executed written receipts therefor and endorsed and cashed checks written in payment thereof".*

that by reason thereof appellant was estopped from denying the validity and continuance of the trust. Appellees than aver the facts to be:

"(a) That said trust continues and endures until April 20, 1966, unless sooner terminated by the death of all the beneficiaries living at the time of Will's execution and publication.

(b) That said trust and paragraph (e) of Item II do not violate the rule against perpetuity.

(c) That the words 'surviving descendants' as used in paragraph (d) of Item II of said decedent's Will refers to surviving descendants of those beneficiaries who die prior to the completion of the trust.

(d) That Katharine Antibus is not the owner in fee of any of the trust property, assets, and real estate.

(e) That upon the termination of said trust in April, 1966, said trustee must sell the trust real estate pursuant to paragraph (f) of Item II of said decedent's Will."

The counter claim then reiterates the contentions of appellant and asks the Court to determine substantially the same questions presented by appellant's complaint. The averments of the cross-complaint were not materially different than those of the counter-claim. Appellant answered each under the Rules.

Trial to the court resulted in finding and judgment substantially as follows:

---

\* The parties stipulated these allegations were true.

"a. During the life of the trust and during the life of said plaintiff, she is the beneficiary and entitled to receive annually as provided in the Will, a one-sixth of the income of the trust after deduction of a reasonable sum for depreciation and current operating expenses.

b. In the event of plaintiff's death during the life of the trust, her descendants surviving her shall be entitled to receive said income per stirpes; in the event of plaintiff's death during the life of the trust, and in the event thereafter during the life of the trust her surviving descendant or descendants shall die then and in that event, the surviving descendant of such deceased surviving descendants shall be entitled to receive said income per stirpes.

c. In the event of plaintiff's death during the life of the trust, without leaving any surviving descendants immediate or remote, then and in that event such one-sixth income of the trust not be distributed but shall be carried forward as a part of the corpus of the trust to be distributed by the trustee as hereinafter provided as a part of the corpus upon the termination of the trust; this rule applies likewise to the income share of any beneficiary who dies during the life of trust without leaving any descendants.

d. The plaintiff is also the contingent residuary devisee of one-sixth of the corpus of the trust, and the proceeds of the sale thereof by the Trustee, the contingency being that she be living on April 20, 1966; if she is not living at the termination of trust, her share will be distributed to her descendants then living."

The law against perpetuities is not violated by the will. The death of Arthur L. Trout during the life of the trust, appellant surviving him, would not terminate the trust. The words "surviving descendants" with reference to appellant, as used in the will, "means and includes all lawful lineal descendants of herself living at the time of her death, except those

who are the lineal descendants of more immediate living lineal descendants" of appellant. The trust terminates April 20, 1966 "or upon the death of the last one of the beneficiaries who were living June 19, 1947 . . . whichever first occurs." The trustee is required to sell the assets and distribute the proceeds when the trust terminates. "If all the shares are then represented by living beneficiaries, the distribution will be made in the same proportions of the entire corpus as the beneficiaries are receiving, or entitled to receive, of the income of the trust; in this regard, the Court recognizes as within the issues the problem of distribution in the event of the death, during the life of the trust, of one or more beneficiaries who leave no descendants. In that event, the entire corpus shall be distributed to the surviving beneficiaries at the termination of the trust in shares having the same proportion that the shares of the income that they were then receiving bear to each other."

The error assigned here is the overruling of appellant's motion for a new trial. The specifications of that motion are, that the decision of the court is not sustained by sufficient evidence and is contrary to law.

In a pre-trial stipulation the parties agreed that the lease of April 20, 1946, was made between testator and Mooney. Appellant admitted the averments of the counter-claim heretofore indicated by (*) were true, but denied she was estopped to question the existence of the trust by her acceptance of distribution payments. She admitted the averments in the counter-claim as to her contentions regarding the trust were true, and denied the contentions of appellees. The lease was introduced in evidence. Other than the foregoing, no material evidence was introduced.

The parties hereto are agreed that the principal

question presented by this appeal is a determination of the meaning of the following words in Item II (e) of the will: "this trust shall terminate in any event not later than the termination of a certain lease which I have executed with Albert Mooney covering real estate which I own in Knox County, Indiana."

Appellant contends that the word "termination" used in said provision must be given its primary and generally accepted definition; that, therefore, the testator by using this language intended the trust should come to an end in the event that subsequent to the making of the will he and his tenant should cancel the existing lease. She then asserts the new lease of August 2, 1946 cancelled the existing lease and thereby terminated the trust.

Appellees contend that under the circumstances in this case the trial court properly resorted to rules of construction and determined the word "termination" as used in the above clause clearly meant that the trust endures until the lease expires by the efflux of time, unless the trust was sooner ended by the death of all beneficiaries living at the time of testator's death.

In support of their respective contentions the parties have cited numerous authorities, but, as stated by the Supreme Court in the case of *Waybright et al.* v. *Longstreet et al.* (1943), 221 Ind. 251, 46 N. E. 2d 683:

"We have found many cases from other states, containing somewhat similar provisions in wills, where conflicting results have been reached by the court. In no two cases, however, were the provisions of the wills and the facts involved exactly the same, nor are the provisions of the will and the facts in any of such cases exactly the same. as in the instant case. In the early case of *Smith* v. *Bell* (1832), 6 Pet. 68, 80, 8 L. Ed. 322, Chief Justice Marshall said: 'It has been said truly . . . that

cases on wills may guide us to general rules of construction; but unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as to the polar star to direct them in the construction of wills.' "

As illustrative of this principle, all of the parties hereto rely on the case of *In Petition of Prime* (1939), 335 Pa. 218, 6 Atl. 2d 530, which is the only case they found wherein the term of a testamentary trust was linked to the term of a lease. However, the facts in that case are clearly distinguishable from those herein. There the testatrix had, in January, 1905, leased certain property for a period of fifty years. By Paragraph 9 of of her will, executed in 1909, she "devised all her property to her executors and trustees, the net income thereof to be paid as follows: one-half to testatrix's son, Robert, and one-half to be used for the education of a granddaughter, Evalyn Dun Douglass, until she reaches the age of 25 years, when 'any portion of the last mentioned one-half then remaining in the hands of my executors and trustees . . . shall be paid over to her, and hereafter the whole of said last-mentioned one-half as collateral shall be paid over to her for her sole use and benefit' ".

The tenth paragraph provides, in part, as follows: "If my son Robert Graham Dun Douglass shall be living upon the expiration of the present lease of my real property at Easton, Pennsylvania to Evan Dalrymple, then and in such event, I give, devise and bequeath to my said son Robert Graham Dun Douglass two-thirds of all the real property of which I may die seized or possessed, and the remaining one-third to my granddaughter Evalyn Dun Douglass, provided she be then living."

The testatrix died in 1915. In 1934, the trustee declared the lease forfeited for default of the lessee. The question before the Court was whether this action terminated the lease. In affirming the decision of the trial court holding that it did not, the Supreme Court of Pennsylvania quoted with approval the following statement of the trial court:

"The testatrix contemplated and intended a fixed and not a variable period of time. It is clear that the testatrix at the time the will was written would not have desired that the trust terminate before Evalyn had attained the age of 25 years. Yet, had the testatrix died shortly after executing the will, and had Dalrymple then defaulted the trust would have been terminated almost immediately, before the education of Evalyn had been completed, if the words 'expiration of the lease' meant any termination of the lease. At the same time it is evident that the testatrix desired Evalyn to enjoy one-half of the income from the trust either for the period of her life or if she and Robert lived that long until the expiration of the lease. Can it reasonably be assumed that the testatrix intended the period during which Evalyn should enjoy one-half of the income of the trust to depend upon the faithful performance of a lessee, a stranger to the estate? . . . In the context of a thoughtful and solemn devise of property the court can only conclude that the testatrix in measuring time by the duration of a lease contemplated the full period of the agreed term of the lease, intending, as testators habitually intend, that the efflux of time and the survival of issue, and not the irrelevant and self-interested act of a stranger, should determine the ultimate disposition of her estate."

In this case testator provided for a variable period of time for the trust and the date of the termination of the lease was changed by the act of the testator and his lessee. There is nothing in the will herein to indicate the

purpose of the trust was to provide an income to any of the beneficiaries for a particular purpose.

For the reasons hereinafter stated, we cannot agree with the above contentions of the parties. In our opinion the word "termination" as used in the above quoted provision of the will, indicated the intent of the testator that the trust should continue only so long as Mooney was the tenant of this property. In controversies of this nature the cardinal rule which must guide the courts is to determine and give effect to the intention of the testator as expressed in the will. *Martin et al.* v. *Raff et al.* (1944), 114 Ind. App. 507, 52 N. E. 2d 389; *Major et al.* v. *Major et al.* (1938), 106 Ind. App. 90, 15 N. E. 2d 754; *St. Mary's Hospital of Evansville* v. *Long et al.* (1938), 215 Ind. 1, 17 N. E. 2d 833. Ordinarily this is determined from the four corners of the instrument. Rules of construction are only resorted to where there is an actual or *latent* ambiguity in the will. In our opinion the record herein presents the latter form of ambiguity.

In the case of *Daugherty, Administratrix* v. *Rogers* (1889), 119 Ind. 254, 20 N. E. 779, the Supreme Court, speaking on this subject through Judge Mitchell, said:

"It may often happen that persons or things, or the intention of the testator respecting them, may seem to be sufficiently defined by the terms of the will, and yet when the language employed, and the facts to which it refers, are brought in contact with each other, the language and the facts are so inharmonious as to leave the intention of the testator obscure. Thus an ambiguity arises, not upon the face of the will itself, but from facts therein referred to which are extrinsic to the instrument. This, according to the maxim of Lord Bacon, constitutes the very essence of latent ambiguity, which he defines to be 'that which seemeth certain and without ambiguity for anything that appeareth on

the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity.' *Hawkins* v. *Garland,* 76 Va. 149 (44 Am. Rep. 158).

" 'An ambiguity which arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon these words when applied to the object, or to the subject which they describe,' is a latent ambiguity. 1 Am. and Eng. Encyc. of Law, p. 530, and note.

. . .

"Another rule, of equal importance to that above remarked upon, is to be kept in view, and that is, that while a testator is always presumed to have used the words in which he has expressed his intentions, according to their strict and primary acceptation, so that when there is nothing in the context to show a different purpose, and when the words so interpreted are sensible when applied to the extrinsic facts to which they refer, parol evidence will not be admitted to show that the words were used in some other or popular sense; but if to give the words employed their strict, primary meaning renders the will insensible, or unmeaning, with reference to extrinsic facts and circumstances, courts will then look into all the extrinsic circumstances that surrounded the testator at the time, to see whether the language of the will can be rendered sensible with reference to those circumstances by giving the words used some other proper but secondary meaning."

If the lease of April, 1939, as modified in April of 1946, had not been changed as to the date of termination by the lease of August, 1946; or if testator had provided the trust would terminate April 20, 1966; or if he had provided the trust would terminate on the expiration of the term of the lease of April, 1946, then there would be no question as to his intention as to when the trust should terminate. A latent ambiguity arises from the sole fact that the date for the termination or expiration of the lease in effect at the time of testator's death was changed from April,

1966 to August, 1956 by the parties after the will was executed.

It seems to us the testator clearly indicated his intention that the trust should end when one of three events occurred, viz: (1) on the death of the last surviving beneficiary living at the time the will was executed; (2) when Mooney ceased to be a tenant of his real estate; (3) when the term of the lease expired.

A consideration of the various leases of the testator with Mooney is evidence of this intention. In April, 1939, testator leased to Mooney for agricultural purposes 320 acres of land in Knox County. This lease, by its express provisions, expired ten years from March 1, 1939. On April 20, 1946 this lease was modified in the following particulars: Approximately 144 additional acres were leased to Mooney; lessee was given the right to sub-lease all or any part of the land; the term of the lease was extended from April 20, 1946 to April 20, 1966. On August 2, 1946 the parties entered into another agreement which purportedly cancelled the prior lease and the modification thereto. This lease contained the following significant provision:

> "Said lease and rental is for a period of ten (10) years from the date of the execution of this agreement, provided, however, *That in the event of the death of the party of the second part prior to the termination of said 10-year period said lease shall terminate and shall be null and void.* Provided, further, that in the event the party of the first part dies before the termination of said 10-year period this lease shall terminate and be null and void as to the lands of the party of the first part in Busseron, Widner and Washington Townships, Knox County, Indiana." (Our emphasis.)

It further provided that should testator desire, during the term of the lease, to lease the land for oil and gas operations, that lessee shall execute all necessary papers,

etc., and that any such oil or gas lease "shall be paramount and superior to this farm lease."

The lessee paid the same rental under all of the foregoing agreements.

While it is true the agreement of August 2, 1946 asserted the original lease and modification thereto were thereby cancelled, we regard it, in effect, as only a modification of those agreements. The lessee at no time surrendered the possession of the property he acquired under the original lease. Under this modification the land was, as provided in the original lease, to be used by lessee for agricultural purposes at the same rental. It clearly provided that in the event the lessee died before the termination of the 10-year period the lease "shall terminate and be null and void"; that in the event the testator died "before the termination of the 10-year period" said lease would terminate as to the lands which were added in the April, 1946 modification of the original lease.

We are of the opinion these provisions indicate the intent of testator that the trust should continue not longer than August 2, 1956.

Since it is disclosed by appellant's brief that each of the primary beneficiaries are alive, it is not necessary to discuss other questions raised by the parties.

In our opinion a new trial of this case is unnecessary. Judgment reversed with instructions to the trial court to enter judgment in accord with the views expressed herein.

NOTE.—Reported in 135 N. E. 2d 835.