**DOMBEY, Plaintiff-Appellee, v. RINDSFOOS et, Defendants-Appellees, and SAXBE, Attorney General, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

Nos. 5753, 5754 & 5764.   Decided March 11, 1958.

524

Robert C. Tyler, C. Richard Grieser, Columbus, for plaintiff-appellee.

Clarence D. Laylin, Edward H. Laylin, Rodney B. Baldwin, Columbus, for defendants-appellees.

William Saxbe, Atty. Genl., Robert E. Boyd, Neva H. Wertz, Asst. Attys. Genl., Columbus, for defendant-appellant.

(DEEDS and FESS, JJ, of the Sixth District; HORNBECK, J, of the Second District, sitting by assignment in the Tenth District.)

## OPINION

By DEEDS, J.

There are three appeals for a review of the judgment of the Probate Court of Franklin County involving the Will and Trust Estate of William Rindsfoos, deceased.

William Rindsfoos, deceased, died January 15, 1956, owning certain shares of the capital stock of The Brunson Bank & Trust Company and The Brunson Savings & Loan Company, of Columbus, Ohio.

On February 6, 1956, in accord with the provisions of the Will of the decedent, the Probate Court appointed the defendants-appellees, Virginia M. Rindsfoos, Winifred M. Poly, Walter P. Reiter and Frederick E. Jones as the executors of the estate of the testator.

The defendants-appellees are also designated by decedent's Will to act as co-trustees of the decedent's trust estate.

By the terms of his Will, the decedent created the "William and Virginia Rindsfoos Foundation" and directed that, after payments to certain life beneficiaries, including Virginia M. Rindsfoos, his surviving spouse, during her life, the entire remainder of income from his trust estate should be used for certain designated charitable purposes.

The defendant-appellant, William Saxbe, Attorney General of the State of Ohio, is a party by virtue of official responsibility in actions involving charitable trusts, as provided in the Charitable Trust Act, §109.23 et seq, §2307.131 R. C.

Appeals number 5753 and number 5764 were taken by defendant-appellant, William Saxbe; appeal number 5754 was taken by plaintiff as an appeal on law and fact from orders entered July 2, 1957, and July 22, 1957; on October 4, 1957, appeal number 5754 was reduced as on law and fact and retained on law only.

Although not formally consolidated, the appeals have been considered together, by consent and without objection, except as will appear later in this opinion. The plaintiff, Alex S. Dombey, has also filed assignments of error as appellee in appeal number 5753. Motion by defendant executors has been filed to dismiss plaintiff-appellee's assignments of error.

William Saxbe, Attorney General, defendant-appellant, has filed the following assignments of error:

"1. The Probate Court erred in holding that by his Last Will and Testament, William Rindsfoos, deceased, intended to vest in his executors the fullest, widest, and most complete power of discretion that could be conferred upon fiduciaries.

"2. The Probate Court erred in granting the motion of the Executors for approval of their report of June 11, 1957, and in approving the sale of the shares of stock of The Brunson Bank & Trust Company and of The Brunson Savings & Loan Company to William C. Cook and Associates for the aggregate price of $988,731.90.

"3. The Probate Court erred in holding that the said Executors, in recommending to that Court the approval of the bid of William C. Cook and Associates, exercises in good faith the discretion vested in them by the said Will.

"4. The order of the Probate Court is contrary to the manifest weight of the evidence."

Plaintiff-appellee, Alex S. Dombey, has filed assignments of error as follows:

"1. The Probate Court of Franklin County, Ohio, erred in its order of July 2, 1957, in approving the report, dated June 11, 1957, of the defendant executors and the proposed sale of the shares of stock of The Brunson Bank and Trust Company and of The Brunson Savings and Loan Company to William C. Cook and Associates for the aggregate price of $988,731.90, in that said approval and proposed sale were and are in violation of the agreement made in the course of proceedings in said Probate Court between Plaintiff-Appellee and the Defendant-Appellees, fiduciaries in the Estate of William Rindsfoos, deceased.

"2. The said Probate Court in said order erred in failing or refusing to disapprove said report of the defendant fiduciaries and in failing or refusing to direct said fiduciaries to perform under said agreement with Plaintiff-Appellee by accepting the latter's highest offer for the said shares of stock in the aggregate amount of $1,250,500.00."

The action was for a declaratory judgment in the Probate Court and was commenced October 30, 1956, by the plaintiff, Alex S. Dombey, as the owner of 457.39 shares of the capital stock of The Brunson Bank & Trust Company of Columbus, Ohio.

In plaintiff's petition in the Probate Court, the plaintiff alleged in substance that the defendants are co-executors and trustees of the Estate of William Rindsfoos, being appointed by the Probate Court on February 6, 1956; that defendant, Virginia M. Rindsfoos, is a legatee under the Will; that Virginia M. Rindsfoos is a member of the Board of Directors of The Brunson Bank & Trust Company and that defendant-executor, Walter Reiter, is an Executive Vice-President of the City National Bank & Trust Company of Columbus, Ohio.

Plaintiff alleged further that of the 2,500 outstanding shares of the Brunson Bank, 1,313.09 shares are in said estate and 681.52 shares in the Rindsfoos Holding Company, all of which shares are under the control and in possession of the defendants in said estate and trust and that plaintiff is the owner of 475.39 shares.

Plaintiff alleges that by the terms of the Will of William Rindsfoos

the defendants as executors were required to make a sale of the shares of the said Brunson Bank within twelve months after their appointment for not less than the book value thereof per share; that plaintiff made an offer on September 21, 1956, for all of the stock of The Brunson Bank & Trust Company, held in said estate, for a price of two dollars per share above the book value thereof; that at least one other bid was made at a price in excess of the book value of said shares; and that no action was taken on any of the said bids by the defendants.

Plaintiff alleged further that at the time of his death the testator was the President and Cashier of the Brunson Bank; that since the death of the decedent those offices had not been filled; and that the management of the bank was under the management of a Board of Directors representing only 30 shares of the 2,500 shares outstanding; that unless a sale of the bank stock is made in conformity with the Will, defendant, Walter Reiter, as the Executive Vice-President of a competing bank, has the power to vote the liquidation or merger of the Brunson Bank.

Plaintiff alleges that the defendants authorized and directed the Board of Directors of the bank to enter into a renewal of the lease on the premises occupied by the bank for a period of five years at a rental of $20,000 per annum, in violation of the terms of the Will of the decedent, William Rindsfoos.

Plaintiff alleges that the control and management of said bank by the defendants is detrimental to the bank and plaintiff and is contrary to the Will of the testator; that unless directed by an order of the Court, defendants will continue to refuse to consider bids for the purchase of said stock, notwithstanding said bids are advantageous to the best interest of both the bank and trust estate; and that finally defendants will liquidate or merge said bank to the irreparable damage and loss to plaintiff.

The prayer of plaintiff's petition prayed for:

"(a) a construction of the Will of William Rindsfoos, deceased, with particular reference to Item V, paragraph (k) of that Will, and the determination, direction and judgment of the Court upon the duties of defendants under said provision and in the lawful and proper administration of the estate and trust (1) to make an advantageous sale of the stock of the Brunson Bank & Trust Company and The Brunson Savings & Loan Company by accepting an advantageous offer when made or prior to expiration thereof; (2) to divest themselves of ownership of said stock and to remove themselves from the operation, control, direction or management of said institutions; and (3) to dispose of said stock at best available offer and to avoid any diminution of assets or liquidation or merger of said institutions;

"(b) the direction and judgment of the Court with reference to the rights of Plaintiff to prevent diminution of assets and net worth and liquidation or merger of said institutions by the acts of or inaction of Defendants;

"(c) the direction and judgment of the Court as to the rights and protection of unknown beneficiaries under the Will of said William Rindsfoos, deceased;

"(d) and for such other relief, in law or equity, as may be just and which this Court in the exercise of its plenary powers and jurisdiction may grant."

On November 13, 1956, plaintiff filed application for mandatory injunction requiring executors to make sale of the shares to plaintiff. Plaintiff's application was dismissed January 31, 1957. Plaintiff filed notice of appeal to the Court of Appeals.

Demurrer by the defendants to plaintiff's petition was overruled by the trial court on January 25, 1957.

Defendants, as executors, filed answer and cross-petition on February 15, 1957.

By the cross-petition of the defendants, William Saxbe, Attorney General, was made a defendant, and Virginia M. Rindsfoos was also named as a defendant individually.

The answer of the defendants, as co-executors of the estate of William Rindsfoos, deceased, admitted that said defendants were appointed as co-executors of said estate by the Probate Court of Franklin County, Ohio, on February 6, 1956; denied that they are acting as trustees of said estate; denied that Virginia M. Rindsfoos is a legatee under said Will and say that she is one of several beneficiaries of the trust created by said Will.

The answer admitted that Virginia M. Rindsfoos is a member of the Board of Directors of The Brunson Bank & Trust Company and was first elected January 18, 1956.

Defendants deny that the powers and duties of the executors and trustees expressed in said Will with reference to the disposition of said stock are identical; admit that plaintiff made a bid to defendants as executors for the 1,313.09 shares of the stock of said Brunson Bank directly held in their estate on February 29, 1956, and that no action was taken thereon for the reason that they were without authority to consider an offer to purchase said shares only; admitted that other offers had been received for the purchase of part or all of the shares of the stock of the said two institutions, directly or indirectly held by them, and that one or more of the executors deemed the offers to be not advantageous.

Defendants admit that plaintiff had notified these answering defendants that plaintiff was unalterably opposed to any possible liquidation or merger of The Brunson Bank & Trust Company; deny that the executors authorized and directed the Board of Directors of said bank to renew the said lease; deny that their ownership of said stock or the position of Virginia M. Rindsfoos as a Director of said bank is in violation of the terms of the Will or principles of law and deny that the executors are actually engaged in the management of said bank.

Defendants admit that sale of the stock of said institutions must be agreed to unanimously, by the terms of decedent's Will. There are other denials, admissions and allegations in the answer of the defendants as executors not considered pertinent or necessary to be recited here.

The pertinent allegations of the cross-petition of the defendants as executors are that:

"The contentions of the plaintiff in this action have raised doubt as to the powers and duties of these defendants and cross-petitioners with respect to the exercise of the power of sale vested in them by ITEMS V (k) and IX of said Will, and therefore they cannot safely proceed in that regard, as they desire to do, without the direction of the Court. Said questions are:

"1. Do the Defendants and cross-petitioners, as executors, still possess said power of sale? They are of opinion that said power remains vested in them. The defendants and cross-petitioners are informed that the plaintiff contends otherwise, and claims to be entitled to the shares of stock to which said power relates, because of having made a bid therefor, at a price per share in excess of the book value thereof, which bid was not accepted or rejected on or prior to February 6, 1957.

"2. Do the powers and duties vested in and imposed upon the executors and the trustees, respectively, by ITEMS V (k) and IX of said Will relate and pertain to the shares of stock of The Brunson Bank & Trust Company and of The Brunson Savings & Loan Company, belonging to the Rindsfoos Holding Company, as well as to the shares of stock of said respective companies held directly by the executors, and, if so, must the shares of stock of each of said companies, including both those directly held and those belonging to the Rindsfoos Holding Company, be sold, if at all, as a unit and not piecemeal or separately? The defendants are of opinion that the testator conceived of the stocks belonging to The Rindsfoos Holding Company as comprised within his 'holdings' of the stocks of said Bank, and said Savings & Loan Company, respectively, and that his expressed intention was that each of said holdings of such stocks shall be dealt with by his executors or the trustees as a unit. These defendants and cross-petitioners are informed that the plaintiff does not question their power to sell the stocks belonging to the Rindsfoos Holding Company, but does contend that the stocks directly held by them may be separately sold.

"3. If it be determined that the stocks belonging to The Rindsfoos Holding Company are comprised within the power of sale vested in the executors, are the executors empowered to vote the stock of The Rindsfoos Holding Company in such manner as to effectuate said power, by either a sale of the assets of said Holding Company, or its liquidation, and have they discretion as to their course in the premises? They cannot safely proceed without the direction of the Court in that particular.

"It appears from said Will and codicil, 'Exhibit A' the following are legatees or beneficiaries thereunder:

"Jean Caldwell is a pecuniary legatee under ITEM III of said Will. This legacy has been fully paid to her.

"Jean Caldwell, Winifred Poly and Adelaide Laver are contingent beneficiaries of the trust created by said will and their several interests in the subject of this cross-petition are not such as to make them necessary parties hereto.

"Virginia M. Rindsfoos, who is sued in the petition as a legatee, is the life beneficiary of the income of the trust created by said Will, with the right to a guaranteed income of $15,000 annually, payable to the

extent necessary out of the principal, and is a necessary party hereto.

"The First Presbyterian Church of Bremen, Ohio, the First Presbyterian Church of Circleville, Ohio, and the Broad Street Presbyterian Church of Columbus, Ohio, are sub-trustees of charitable trusts under the said trust; the public charitable interests in said sub-trusts, as well as the public charitable residual and remainder interest in the said principal trust, are directly concerned with the questions hereinabove stated, and should be represented herein by the Attorney General of Ohio."

The prayer of said cross-petition is as follows:

"Wherefore, these defendants and cross-petitioners pray that William B. Saxbe, as Attorney General of Ohio, be made a party hereto, and for a declaratory judgment determining:

"1. That the Executors of the estate of William Rindsfoos now have, and during their administration of said estate will have power to sell the holdings of said estate in the stocks of The Brunson Bank & Trust Company and The Brunson Savings & Loan Company.

"2. That the plaintiff is not now entitled to said shares, subject to the payment of the amount bid by him for their purchase.

"3. That said power of sale extends to the stocks of said respective companies, owned by the Rindsfoos Holding Company.

"4. That said power may be exercised only by selling in one unit all the shares of stock of The Brunson Bank & Trust Company, owned and controlled by the executors, including those belonging to said holding company, and by selling in one unit all the shares of The Brunson Savings & Loan Company owned or controlled by the executors, including those belonging to said holding company, or by selling both such units to the same purchaser.

"5. That the executors have power to vote the stock of the Rindsfoos Holding Company for the sale of substantially all the assets thereof or for the liquidation thereof, as they may deem advisable in order to effectuate the intention of the testator as expressed in said Will.

"And defendant cross-petitioners further pray for all other and proper relief to which they may be entitled on their cross-petition."

On March 1, 1957, Virginia M. Rindsfoos, as an individual, filed her answer to petition and to the cross-petition of the executors.

Plaintiff filed answer to the cross-petition of the defendants as executors, in which plaintiff denied the authority of the executors to sell the shares held by the Rindsfoos Holding Company.

The defendant, William Saxbe, filed an answer to said cross-petition as Attorney General on February 28, 1957. The Attorney General admitted the allegations of fact contained in the said cross-petition and joined in the prayer of the cross-petition, and further asked the Court for a "judgment and decree determining the questions presented to the Court by the defendants, and for such other and further relief as may be just and equitable in the premises."

It is disclosed by the record before us that on March 12, 1957, plaintiff, Alex S. Dombey, and counsel for the executors entered into an agreement in the presence of the judge of the Probate Court, with the

purpose and object of terminating the controversy between the parties, in order that an advantageous sale of the shares of the Brunson Bank and the Savings and Loan Company could be made by the executors with the approval of the Probate Court of Franklin County.

In accord with and as a result of the agreement between plaintiff and counsel for the executors, plaintiff dismissed his petition in the Probate Court; also answer to the cross-petition of the executors; withdrew appeal to the Court of Appeals from the order of the Court dismissing plaintiff's application for a mandatory injunction; and in accord with that agreement plaintiff also dismissed an action pending in the Court of Common Pleas for the specific performance of agreement to sell the shares of the financial institutions to plaintiff.

On March 15, 1957, the Probate Court of Franklin County made the following finding and determination on the cross-petition of the executors:

"This day came the parties, by their respective counsel, and the plaintiff, in open court, dismissed his petition, with prejudice, withdrew his answer to the cross-petition of the defendants, Virginia M. Rindsfoos, Winifred M. Poly, Walter P. Reiter, and Frederick E. Jones, as executors of the Will of William Rindsfoos, deceased, and waived his right to answer further herein.

"And thereupon this cause came on to be heard and was submitted to the Court on the cross-petition of the defendants, Virginia M. Rindsfoos, Winifred M. Poly, Walter P. Reiter and Frederick E. Jones, as executors of the estate of William Rindsfoos, deceased, the will of William Rindsfoos, attached thereto as an exhibit, and the answer to said cross-petition of Virginia M. Rindsfoos, as an individual, and of William Saxbe, Attorney General of Ohio.

"The Court, upon consideration, finds that the allegations of said cross-petition are admitted to be true, and that all persons who have or claim any interest which would be affected by the declaration prayed for in said cross-petition have been made parties hereto and are before the Court.

"The Court finds and adjudges as to certain questions presented in said cross-petition and the pleadings that the true intention and construction of the said Will as to said questions is as follows:

"1. That the executors of the estate of William Rindsfoos now have and during their administration of said estate will have, power to sell the holdings of said estate in the stocks of The Brunson Bank & Trust Company and The Brunson Savings & Loan Company.

"2. That the plaintiff is not now entitled to said shares, subject to the payment of the amount heretofore bid by him for their purchase.

"3. That said power of sale extends to the stocks of said respective companies, owned by the Rindsfoos Holding Company.

"4. That said power may be exercised only by selling in one unit all the shares of stock of The Brunson Bank & Trust Company, owned or controlled by the executors, including those belonging to said Holding Company, and by selling in one unit all the shares of The Brunson Savings & Loan Company owned or controlled by the executors, including

those belonging to said Holding Company, or by selling both such units to the same purchaser.

"5. That the executors have power to vote the stock of the Rindsfoos Holding Company for the sale of substantially all the assets thereof or for the liquidation thereof, as they may deem advisable, in order to effectuate the intention of the testator as expressed in said Will.

"And the Court further finds from said cross-petition that the executors desire to sell said shares of stock, and have prayed for all proper relief, on consideration of which it is hereby ordered that said executors proceed, in such manner as they may deem for the best interests of their estate, to procure and receive offers for the purchase of the shares of stock of said The Brunson Bank & Trust Company and of said The Brunson Savings & Loan Company; that said executors report to the Court on or before May 1, 1957, their proceedings in that behalf, and any offer or offers by them received, and their reasons for any immediate action or inaction proposed by them in the premises, and in the event proposed inaction, their reasons for requesting further time; and jurisdiction is hereby retained for the purpose of considering and acting upon such report."

On May 1, 1957, the executors reported pursuant to the above order of the Court of March 15, 1957, that the Rindsfoos Holding Company had been dissolved and that the shares of The Brunson Bank & Trust Company and The Brunson Savings & Loan Company that had been held by that company were distributed to the executors; that they had received two offers for the purchase of all the shares of The Brunson Bank & Trust Company and three offers to purchase all the shares of The Brunson Savings & Loan Company but that the offers had not been considered fully by the executors; that the executors had received requests from other interested parties which would require additional time.

Counsel for the executors requested the Court to extend the time for receiving further offers for a period of ninety days.

On May 3, 1957, the Court extended the time within which the executors might receive and make a report of further offers to May 18, 1957.

On June 4, 1957, the executors reported that "on the basis of their study and investigation, the Executors, acting unanimously, as required by the Will of William Rindsfoos, deceased, have determined to sell all the shares of the stock * * *" of the two companies "to William C. Cook and Associates of Columbus, Ohio, for the aggregate price of $988,731.90, which the Executors have found to be in excess of the probable book value per share * * * and respectfully represent that a sale at said price is not only in the best interest of their estate, and in conformity with the directions contained in the will of William Rindsfoos, deceased, but is the best price which has been proposed after their diligent efforts to procure and receive offers."

The executors prayed for an order approving the acceptance of the Cook offer.

It is clear from the record that the report of the executors on May 18, 1957, was not a compliance with the order of the Probate Court

entered on March 15, 1957, and as a result further hearings were ordered by the Court and hearings were held on various dates, including an extensive hearing on June 4th and 5th, which culminated in a finding by the Court with respect to the agreement which had been entered into between plaintiff and counsel for the executors and is in part:

"Heretofore in this same matter said Alex S. Dombey filed a petition for declaratory judgment, involving a construction of the Will and the rights of certain parties thereunder, and an application for a mandatory injunction, requiring executors to sell the stock of the Bank and of the Building and Loan Company. Appeal was taken from the judgment of the Probate Court to the Court of Appeals. An action for specific performance of contract was also filed in the Court of Common Pleas.

"During the pendency of these matters Dombey and the executors expressed a desire to arrive at some suitable procedure under which the stock could be sold to the best advantage, eliminating prolonged and unnecessary delay and the unfavorable effect of pending litigation on prospective purchasers, all of which might tend in their opinions to make it impossible to attract the highest and best bidders and unreasonably delay the setting up of the trust and the closing of the estate.

"Negotiations were begun, as a result of which the Court feels that an agreement was reached with reference to the pending litigation and the sale.

"The evidence in the case occupied two days of trial. There are differences of recollection, as to some matters and some divergence in inferences to be drawn from events and conversation. There is dispute as to a deadline for the receiving of bids. There is conflict as to whether continuances of hearings were obtained in the regular manner and whether bids were received out of time, and similar matters. But the Court is of opinion that the decisive preponderance of the evidence indicates that an agreement was reached, the salient points of which were:

"That Dombey would dismiss his actions in the Probate Court and Common Pleas Courts and the Court of Appeals;

"That the executors would proceed to sell the stock of the financial companies if possible by May 1st, 1957;

"That a report of their negotiations and their recommendations as to the sale would be made by the executors on May 1st, 1957, unless the Court, for good cause shown, extended the period;

"That, his bid having reserved the right, Dombey should be permitted to make a further offer for the stock when all other bids were in;

"That, if he exercised such right, all other prospective purchasers whose bids had been submitted on the day of the executors report should have a like privilege;

"That Dombey, who concededly was not acting in his own behalf, should disclose his principal on the day that the names of the bidders and amounts bid were disclosed;

"That such bids were not to be submitted as at a public auction, but to be submitted to the executors at that time, who would then be given a reasonable time for consideration and report;

"It is undisputed that Dombey has dismissed his actions, as agreed,

and has disclosed his principal, and we feel that the executors must now proceed in conformity with their agreement."

As of June 6, 1957, the trial Court entered an order in part as follows:

"That the executors be directed to appear in open Court on Friday, June 7th, 1957, at eleven o'clock A. M. to receive the additional bid in writing of Alex S. Dombey, if he chooses to exercise his right to submit same, and in the event such right is exercised, to permit the same privilege to any other of the bidders above properly before them, and a report thereon, with their recommendations on Tuesday, June 11th, 1957, at ten thirty o'clock A. M.

"This order is entered nunc pro tunc, effective as of June 6, 1957."

Further hearings were held following the order of the Court as of June 6, 1957.

We have read and carefully appraised all the testimony and evidence contained in the transcript of more than 500 pages.

We proceed directly to a consideration of the order of the Probate Court entered July 2, 1957, which is the judgment authorizing and approving the sale of the shares to William C. Cook and Associates.

The order and judgment of the Probate Court entered July 2, 1957, from which appeal number 5753 was taken, determined in part that on June 4, 1957, the executors made their report disclosing the names of all bidders whose bids had been submitted prior to May 18, 1957, the amounts, terms and conditions of each bid and that said executors recommend the sale of said stock to Wiliam C. Cook and Associates; that Alex S. Dombey disclosed his principal for the first time on May 18, 1957; that the Court directed the executors to appear in open court on Friday, June 7, 1957, to receive the additional bid in writing of Alex S. Dombey and to permit the same privilege to any other bidders properly before the executors; that the executors appeared on June 7, 1957; that Alex S. Dombey did submit an additional bid; that T. Bernard Burke, Trustee, submitted an additional bid; that the executors received the additional bids for consideration with the bid of William C. Cook and Associates; that the hearing was continued to June 11, 1957.

The Court found further that pursuant to the order of the Court, the executors filed their report on June 11, 1957, stating that neither of said additional bids of Dombey and Burke as trustee was acceptable to them and that the only bid to which said executors were in unanimous agreement was the bid of William C. Cook and Associates; that thereupon a hearing was had; that at said hearing the executors reported that the said three bids for the stock were as follows:

"1. That of Alex S. Dombey, acting as agent for Approved Finance, Inc., for the stock of both financial institutions held by the fiduciaries in the total amount of $1,250,500.00, which bid contained the statement that the shares, if sold to him, would be assigned to Approved Finance, Inc., Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company;

"2. That of T. Bernard Burke, Trustee, offering to pay for the Savings and Loan Company stock $3,708.86 per share, or the book value per

share at the time of sale, which time should be deemed to be the time of the acceptance determined by the Superintendent of Building and Loan Associations of Ohio, plus $7.20 per share, and for the Bank stock $362.50 per share, or the book value determined by the Superintendent of Banks of Ohio, plus $33.74, or according to the Executors' figures, a total of $1,044,786.02; and

"3. That of William C. Cook and Associates as originally submitted in the amount of $988,731.90."

The Court stated further in the order that the executors reported in open court that they had investigated all bidders; and testified they had been for many years intimate friends, associates and confidants of the testator; that the executors had "repeatedly" talked to the decedent concerning the disposition of the stock and the terms of his Will; that the decedent had frequently indicated that he did not wish such stock to come into the possession of Alex S. Dombey or anyone connected or associated with him, and that the executors were in unanimous agreement that the bid of William C. Cook should be accepted.

The Probate Court determined further that the Court has heretofore held and it is by all parties conceded that the executors have the right to sell the stock here in question; that the executors have fully complied with all the terms and conditions of the oral agreement with Alex S. Dombey; and "that upon careful consideration of the Will and all its parts, the Court finds that the testator intended to confer upon his Executors the fullest, widest and most complete powers of discretion that could be conferred upon fiduciaries; that the Court may not substitute its judgment or opinion for that of the Executors."

The Probate Court determined finally that:

"And the Court finds from the facts and as a conclusion of law, that the Executors of the Estate of William Rindsfoos, deceased, have exercised the discretion vested in them by the Will of their Testator in the premises in good faith and that their recommendations should be approved; it is therefore

"ORDERED, that the motion of the Executors for the approval of their report filed herein on June 11, 1957, be and the same hereby is granted and that the sale of the stock of The Brunson Bank & Trust Company held by said Executors, to-wit 1994.61 shares, and all the shares of stock of The Brunson Savings and Loan Company, held by them, to-wit 86.749 shares, to William C. Cook and Associates for the aggregate price of $988,731.90 be and the same is hereby approved, and upon payment in cash of the said aggregate purchase price the Executors are authorized to transfer and deliver said shares of stock to William C. Cook and Associates."

We consider it pertinent to note here that the offer of William C. Cook and Associates contained the following condition:

"3. Title to said shares will be conveyed free and clear from all liens, encumbrances and restrictions and you will accompany the acceptance of this offer with an order of the Probate Court of Franklin County, Ohio, authorizing and directing the sale of said shares to the undersigned upon the payment of the purchase price."

It is clear from statements made by counsel for the executors, which appear in the record, and also from the course pursued, that the executors sought and would not consummate a sale of the shares to William C. Cook and Associates without the approval of the Probate Court. It is significant, in our view, that the executors did not intend to exercise their discretion and consummate a sale unless the sale was authorized and approved by the Probate Court.

It is clear that the judgment of the Probate Court authorizing the executors to consummate a sale of the shares cannot be sustained unless the sale is in accordance with the decedent's Will and the principles of law applicable to the sale.

We are required to consider the pertinent provisions of the Will of the decedent, William Rindsfoos.

Paragraph (k) Item V, of the testator's Will directs the trustees of his trust estate to dispose of the shares of the Brunson Bank and The Brunson Savings & Loan Company within a specified time, which paragraph is as follows:

"(k) Among my present holdings are substantially all of the stock of The Brunson Savings & Loan Company and a majority of the stock of The Brunson Bank & Trust Company, both of 10 East Broad Street, Columbus, Ohio. If these assets or either of them shall remain in my estate and come into the hands of the Trustees, it is my will, and I direct, that the Trustees shall sell and dispose of such assets at such time as an advantageous sale of them can be made, but not later than twelve (12) months after they shall have been received by the Trustees and for not less than the book value thereof per share, at the time of sale, to be determined by the Division of Banks, Department of Commerce of Ohio or the Superintendent of Building and Loan Associations of Ohio, or their respective successors in function, as the case may require. If not so sold within the time so limited, I direct the Trustees to proceed immediately to cause the liquidation of said institutions (or institution, if only one is involved). Provided, however, that the Trustees, in their discretion, may, within said period of time, in lieu of selling such assets or either of them for cash, participate in a merger of either or both of said institutions, on the above specified basis per share and receive in exchange for the shares of stock of said Bank or Building and Loan Company, or both, shares of stock in such other financial institution or institutions, anything in paragraph (c) of this ITEM V to the contrary notwithstanding, in which event the Trustee shall sell and dispose of the shares so received in exchange from time to time, at such times and in such amounts, and over such period as, in their discretion shall be for the best interest of the Trust, to the end that the investments of the Trust shall finally comply fully with the limitations and qualifications expressed in said paragraph (c)."

By paragraph 9 of Item IX of his Will, the decedent also authorized the executors to make a sale of the shares of the Brunson Bank and The Brunson Savings & Loan Company. The pertinent part of paragraph 9 is that:

"My Executors and their successors, in addition to the rights and

powers which they may have by force of law, shall have power to sell both or either of the assets mentioned in paragraph (k) of ITEM V of this my Last Will and Testament and to sell the property mentioned in paragraph (i) of ITEM V hereof under the same circumstances and with the same degree of discretion, with a view to the accomplishment of the purposes therein mentioned, as is conferred upon the Trustees hereby, and, in the case of the sale of the assets mentioned in said paragraph (k) to invest the proceeds thereof in the same manner as the Trustees are authorized to invest trust funds."

Paragraph (h) of Item V in the decedent's Will provides:

"(h) Subject only to the restrictions mentioned in this Item V, the Trustees may do all such acts, take all such proceedings and exercise all such rights and privileges and enter into all such contracts, covenants and agreements binding the Trust Estate with respect thereto, whether the power is specifically mentioned and described herein or not, as if the said Trustees were the sole and absolute owners of said Trust Estate. It is my Will that my said Trustees shall have and exercise all the powers, privileges and discretions which I might have and exercise if present and acting personally in the premises."

There can be no dispute but that paragraph (k) of the decedent's Will directs the executors or trustees to relinquish and dispose of all interest which the estate of the decedent has in the Brunson Bank and The Brunson Savings & Loan Company, either by sale, merger or liquidation within a specified time.

The testator has directed his fiduciaries by explicit and unambiguous language to dispose of all interest in the Brunson institutions in one of three designated ways, within a specified period of time.

It is the contention of the executors in effect that by paragraph (h) Item V, quoted above, the testator intended that his trustees should manage the trust as if the trustees were the sole and absolute owners and that they were to "exercise all of the powers, privileges and discretions which I might have and exercise if present and acting personally in the premises."

We are required to determine the intention of the testator as expressed in paragraph (h) and whether he intended that the discretion and authority of his executors should be unlimited.

It should be noted that paragraph (h) of Item V contains the specific limitation: "(h) subject only to the restrictions mentioned in this Item V."

Paragraphs (k) and (c) are contained in Item V; consequently in order to determine the "restrictions" intended by the testator it is necessary to consider the contents of paragraphs (k) and (c).

In paragraph (k) of his Will the testator has directed his trustees (or executors) to sell the shares of both the Brunson Bank and The Brunson Savings & Loan Company, or in the event of a merger "the Trustees shall sell and dispose of the shares so received in exchange from time to time, at such times and in such amounts, and over such period as, in their discretion shall be for the best interest of the Trust to the end that the investments of the Trust shall finally comply

fully with the limitations and qualifications expressed in said paragraph (c)."

In paragraph (c), the testator has given his trustees explicit directions with respect to the character of the investments which the trustees may make with the money realized by a sale of the shares in their management of the trust estate.

It is provided in said paragraph (c) Item V of the decedent's Will in part: "That no investment shall be made in real estate," ɩetc., "* * * the Trustees shall not invest more than ten thousand dollars ($10,000.00) in any one mortgage or like investment," etc.

Thereafter paragraph (c) directs the trustees specifically with respect to the character of the securities in which they may invest the funds of the trust estate.

The testator directs and specifically limits the authority of the trustees with regard to the investments which they shall make in part:

"(2) Investments of the following classes must meet the qualifications herein expressed:

"(i) Corporate Securities, other than those of companies in which I am interested at the time of my death, must be seasoned securities listed on the New York Stock Exchange or the American Stock Exchange, or, in case of the discontinuance of both, on the then leading stock exchange in the United States, and

"In the case of stock, must have paid some dividends (either in cash or in stock) continuously each year for at least twenty (20) years prior to the date of purchase;

"In the case of bonds, must be those of corporations which have not defaulted in the payment of interest or principal of any issue for at least twenty (20) years prior to the date of purchase.

"(ii) State, County or City bonds must be voted unlimited tax bonds (but not revenue bonds), and the issuer must not have defaulted in the payment of interest on or principal of any issue for at least twenty (20) years prior to the date of purchase, and, if a city, must have existed as a city for at least twenty (20) years prior to such date;

"Should any qualified securities, after having been purchased, fail to measure up to the qualifications expressed in this paragraph, the Trustees need not dispose of them for that reason alone, but are authorized to sell or retain them, in their discretion, using their best judgment, for the interest of the trust."

It should be reiterated, therefore, that paragraph (c) concerning the investments which the trustees may make and also paragraph (k) which directs the trustees to dispose of the shares either by sale, merger or liquidation, are parts of Item V and that the seeming almost unlimited authority contended for by the executors in paragraph (h) as quoted above is qualified and limited by the statement found in paragraph (h) "subject only to the restrictions mentioned in this Item V," which are the restrictions that direct the trustees specifically in reference to both a sale of the shares and the investments which they may make in managing the trust estate.

Paragraph (k) of the decedent's Will, as set out above, provides with

respect to price, that a sale of the shares shall not be made for "less than the book value thereof per share, at the time of sale, to be determined by the Division of Banks, Department of Commerce of Ohio or the Superintendent of Building and Loan Associations of Ohio, or their respective successors in function, as the case may require."

We are in accord with the view that the decedent intended to provide a method for determining the "minimum price" at which the shares could be sold and certainly did not intend to suggest or imply that the executors should not attempt to make a sale for the highest price obtainable.

It necessarily may be implied, although the Will is silent on the subject, that the bidder would be required to meet the test of financial ability, otherwise the offer could not be considered as being an offer made by a responsible bidder.

In the report of the executors of offers to purchase the shares, filed June 4, 1957, which report included an offer by plaintiff as agent, the statement is made that "The Executors have no question as to the financial responsibility of any of the persons by or on behalf of whom offers have been made and received. Each and all of the proposals are on the basis of immediate sale for cash."

The report filed on that date also contains the statement that the executors had made "diligent efforts to procure and receive offers."

Three of the executors testified in the Probate Court, as shown by the record, to the effect that from the standpoint of financial responsibility the Nationwide companies, consisting of Approved Finance, Inc, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company, were entirely satisfactory.

In reference to offer of William C. Cook and Associates the record discloses in substance that William C. Cook was endeavoring and intended to form a corporation which would eventually become the owner of the Brunson shares; that subscriptions had been secured for shares in the corporation in the aggregate amount of $300,000.00; that a considerable number of persons were prospective subscribers for shares in the corporation and that it was uncertain as to who the remaining subscribers for stock would be.

The testimony in the record discloses, in substance, that the executors had faith in William C. Cook as the principal; that they were relying on Cook to organize and promote a corporation by securing subscribers for shares, and that eventually·the corporation would own and control the shares of the Brunson bank and the Brunson Savings & Loan Company.

Mr. Walter F. Reiter, a defendant executor, who is also Executive Vice-President of The City National Bank & Trust Company of Columbus, Ohio, testified, in substance, that he had secured information concerning the financial ability of Cook and Associates from the records of his bank where William C. Cook and Associates had made an application for a loan, presumably for the purpose of consummating the purchase of the Brunson shares held by the executors. The inference is reasonable that the loan would probably be in the amount of about $700,000.00.

The Probate Court allowed the executors to testify, over objection, as set out in the order of the Court of July 2, 1957, in part, "that the executors had 'repeatedly' talked to the decedent concerning the disposition of the stock and the terms of his Will; that the decedent had frequently indicated that he did not wish such stock to come into the possession of Alex S. Dombey or anyone connected or associated with him." There was additional testimony of a similar character received for the purpose of showing the desire and intention of the testator with respect to the future welfare of the Brunson Bank and The Brunson Savings & Loan Company. The competency of this testimony will be considered later in this opinion.

Sec. 2113.39 R. C., authorizes qualified executors or testamentary trustees to sell any class of personal property, deemed by them to be for the best interest of the estate, if the power "is not expressly limited by such Will" without the authority of the Probate Court.

It is clear in the case before us that the executors were not making a sale of the shares to William C. Cook and Associates, pursuant to §2113.39 R. C., but, instead, sought the approval and were authorized by the Probate Court to consummate the sale to William C. Cook and Associates.

Therefore, it is not necessary for this Court to consider or determine what the responsibility of the executors would be if they had elected to make a sale of the shares pursuant to §2113.39 R. C., without being authorized by the Probate Court.

Sec. 2109.45 R. C., provides:

"Before the probate court confirms a sale by an executor, administrator, guardian, assignee, or trustee made under an order allowing such officer to make a private sale, such court shall require such officer to file an affidavit that such private sale was made after diligent endeavor to obtain the best price for the property and that the sale reported is the highest price he could get for such property."

It is our opinion that §2109.45 R. C., was intended to govern the action of the Probate Court in all sales of estate property, made by executors and trustees pursuant to and under an order of the Court "allowing" such officer to make a private sale.

Sec. 2113.40 R. C. (omitting exceptions not relevant here), provides:

"At any time after the appointment of an executor or administrator, the Probate Court, when satisfied that it would be for the best interests of the estate, may authorize such executor or administrator to sell at public or private sale, at a fixed price or for the best price obtainable, and for cash or on such terms as the Court may determine, any part or all of the personal property belonging to the estate."

We recognize that the order of the Probate Court under review here, was not. when considered strictly, the confirmation of a sale: nevertheless, it is our view that the clear legislative purpose and intent expressed by the enactment of the foregoing sections of the Revised Code must have a persuasive, if not a controlling, influence in a consideration of the sale involved in the appeal now before this Court.

The issue for determination is whether by the terms of the de-

540

cedent's Will and the applicable principles of law the Probate Court should have authorized a sale of the shares to William C. Cook and Associates in preference to a sale of the shares for the highest price bid, at a loss to the trust estate of more, than $260,000.00.

In the declaratory judgment construing the Will of the decedent the Probate Court required the executors to proceed and procure offers to purchase the shares and make reports of the offers received for consideration by the Court.

The Probate Court did not determine that the executors should consummate a sale without being authorized by the Court, but the Court retained jurisdiction for the purpose of considering reports of offers to purchase.

In their final report of offers to purchase, the executors presented three offers (as listed above) and sought an order of the Court authorizing and approving a sale of the shares to William C. Cook and Associates in preference to the highest responsible dollar bid.

It is our conclusion that the Probate Court was required to exercise its discretion as a matter of law, when it authorized the executors to consummate a sale of the shares to William C. Cook and Associates in preference to the highest price obtainable.

It is the opinion of this Court that the terms and provisions of the decedent's. Will are clear and unambiguous with respect to a sale of the shares by the executors or trustees and that extrinsic evidence was not competent for the purpose of determining the intention of the testator.

In the situation presented by the record the Probate Court was required to determine the intention of the testator by a consideration of the terms and provisions of the decedent's Will and extrinsic statements were not competent to make additions or show that the decedent had an intention different than as shown by his Will.

The rule of law has been settled by decisions of the Supreme Court of the State that extrinsic evidence is not admissible for the purpose of adding to a will or to show an intention different than the intention as expressed by the Will.

The principle of law applicable to the extrinsic statements which the Probate Court received as evidence in the case now before this Court is stated in the opinion in **Sommers v. Doersam, et al, 115 Oh St 139,** 152 N. E. 387, pp. 149-150 and 151:

"In the language of Shauck, J., in **Smith v. Hunter, Trustee, 86 Oh St 106, 115:**

" 'If the Court should supply them (words limiting succession to the daughter's heirs at law, who should be of her blood), it would be amending his will rather than construing it. However confidently we might follow counsel in the conjecture that the testator would have used such terms if he had foreseen all that has occurred, we should still be admonished that in ascertaining the meaning of the testator it is of first importance to assume that he meant what he said.'

"Courts cannot 'devise a new scheme for the purpose of spelling out a new theory by which it can be said that the testator intended some-

thing which his language shows that he did not intend. Wright v. Wright, 118 N. Y. S., 994, affirmed 140 App. Div., 634, 125 N. Y. S. 875.

"Adams, Adm'r., v. Jones, 176 Mass., 185, 57 N. E., 362: 'When words have an ascertained meaning, and admit of a rational interpretation, and there is nothing in other portions of the will indicating that they were not used in their ordinary sense, a court cannot depart from that ordinary sense for the purpose of giving effect to what it may be guessed was the intention of the testator, because it would result in a fair distribution of the estate. If, in such a case, the testator did in fact intend to make an equal distribution, he has failed to express that intention in using the words he did use, and the power of the Court goes no further than to ascertain the true meaning of the words used by him as he used them.'

" 'Whatever method may be resorted to for the interpretation of a will, it must be applied solely with a view to arrive at the intention of the testator, as his intention may be gathered from the language found in the instrument itself. However clearly an intention now expressed in the will may be proved by intrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.' Daugherty, Adm'r., v. Rogers, 119 Ind., 254, 20 N. E. 779, 3 L. R. A., 847."

The settled principle has been applied in a very considerable number of decisions by the Supreme Court of the State. We consider those following to be controlling in the case before us:

Steinbrenner, et al., Appellants, v. Dreher, et al., Appellees, 140 Oh St 305, 43 N. E. 2d 283; Kurtz, et al., v. Kurtz, et al., and Cadwell, et al., v. Kurtz, et al., 123 Oh St 425, 175 N. E. 694; Foster, et al., v. Clifford, et al. 87 Oh St 294, 101 N. E. 269; McNeal, Exr., v. Pierce, Admr., 73 Oh St 7, 75 N. E. 938; Robbins, et al., v. Smith, Jr., Admr., et al., 72 Oh St 1, 73 N. E. 1051; Townsend's Exrs. v. Townsend, 25 Oh St 477; Lessee of Worman v. Teagarden, 2 Oh St 380, 382; Page on Wills (Lifetime Ed.) 642, Section 1621-674. Section 1627; See also 57 American Jurisprudence, Section 1040, Wills, pp. 674, 675.

The Will of the decedent in the case now before us for review contained no language which could be construed to mean that the testator intended that his executors or trustees should exercise any control over the shares after a sale of the shares has been consummated. There is no language in the Will which can be construed as meaning that the testator intended that his fiduciaries should participate in any way in the future welfare or management of any corporation which might become the purchaser of the shares of the Brunson Bank or The Brunson Savings & Loan Company.

It is clear, in our opinion, from the evidence in the record concerning the offer of William C. Cook and Associates to purchase the shares, that it would be necessary for the executors to participate in the promotion of the corporation which is to be the ultimate purchaser of the shares, if they are to have any knowledge concerning the future management or control of the Brunson institutions.

There is no language in the decedent's Will which indicates that

the testator intended that the duties of his fiduciaries should be divided with respect to the best interests of the trust estate and the future welfare or control of the Brunson institutions.

The name of Alex S. Dombey does not appear in the Will of the testator and the Will expresses no intention or desire that the Brunson shares should not be sold to any company with which Dombey might have some affiliation or connection.

The evidence in the record does not indicate that Alex S. Dombey has any connection with the Nationwide companies (to which companies the shares are to be transferred) as owner, stockholder, attorney or otherwise, except merely as the agent who presented the offer to purchase on behalf of these companies.

The Will of the decedent provides that such sale by the executors should be "with a view to the accomplishment of the purposes * * * as is conferred upon the trustees hereby, and, in case of the sale of the assets mentioned in said paragraph (k) to invest the proceeds thereof in the same manner as the trustees are authorized to invest trust funds."

The offer of Alex S. Dombey, acting as agent, contains the stipulation that in the event of a sale of the shares to him as agent, the shares are to be assigned to Approved Finance, Inc., Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company.

There is no competent evidence in the record before us tending to show that the three Nationwide companies, which it is intended should be the ultimate purchasers of the shares, are not competent and capable to manage the business and affairs of the Brunson Bank and The Brunson Savings & Loan Company.

It is the conclusion of this Court that the action of the fiduciaries in accepting the offer of William C. Cook and Associates in preference to the highest price obtainable was contrary to the terms of the decedent's Will and clearly was not for the best interest of the trust estate.

The Will directed that the executors should act in the same manner as the trustees were required to act in making a sale.

The responsibility of the executors in making a sale would not be less than the responsibility of trustees of the trust estate.

Raymond v. Evatt, 145 Oh St 234, 61 N. E. 2d 194; Holmes v. Hrobon, 61 Abs 113, 93 Oh Ap 1.

The rule governing fiduciaries of a trust estate is stated in the opinion In Re Estate of Binder, etc., 137 Oh St 26, 27 N. E. 2d 939, at p. 47:

"At this point, the words of Justice Cardozo, when Chief Judge of the Court of Appeals of New York, in rendering the opinion of the Court in the case of Meinhard v. Salmon, supra, at 464, are appropriate. He said:

" 'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising

rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that troddened by the crowd. It will not consciously be lowered by any judgment of this court.' See also **Piatt v. Longworth's Devisees, 27 Oh St 159, 195 and 196; Cox, Admr., v. John, 32 Oh St 532, 539 and 540; Caldwell v. Caldwell, 45 Oh St 512, 522 and 523, 15 N. E., 297.**"

The fiduciaries could not deviate from their duties with respect to the best interest of the trust estate, contrary to the intention of the testator, as indicated clearly by his Will. **Mills v. Connor, et al., Trustees, 104 Oh St 409, 135 N. E. 616. In re Trusteeship of Trust Created by Will of Sedgwick, 74 Oh Ap 444, 59 N. E. 2d 616.**

It is our view that the circumstances and conditions shown to exist in reference to the offer that was accepted would require actions and decisions by the fiduciaries not intended by the Will and not for the best interest of the trust estate.

The statement in the opinion **In re Trusteeship of Stone, 138 Oh St 293, 34 N. E. 2d 755,** is appropriate here, 302-303:

"Since a trustee is a fiduciary of the highest order and is charged with the utmost fidelity to his trust, he must refrain from creating situations where his own interests are brought into conflict with those of the trust, and from doing those things which would tend to interfere with the exercise of a wholly disinterested and independent judgment. In accepting a trust, the trustee is presumed to know the obligations and limitations connected with his high office and, if he transgresses, must abide the consequences."

See, also, 2 Restatement of the Law of Trusts, 432, Section 170, comments c and d; 4 Pomeroy's Equity Jurisprudence (5 Ed.), 222, Section 1077. 62 A. L. R. 1. In re Lewisohn, 294 N. Y., 596, 63 N. E. (2nd.) 589; 2 Scott on Trusts 856, Section 170.

The actions of fiduciaries of a trust estate will not be upheld in a course palpably arbitrary and unreasonable, "It is not sufficient that he be honest, and from a strictly moral standpoint act in good faith; he is bound in law to exercise diligence and to act reasonably." **Moeller v. Poland, et al., Exrs., 80 Oh St 418, 89 N. E. 100; Morris v. Mull, et al., 110 Oh St 623, 634, 635, 144 N. E. 436, 39 A. L. R., 323.** Restatement of Trusts, 431, Section 170.

It is our view that the seemingly unlimited discretion contended for by the language authorizing the trustees to act as if they were the "absolute owners of the Trust Estate" and to exercise "privileges and discretions" which the testator would exercise if present, cannot mean more than that the decedent intended that the fiduciaries would act reasonably, as required by law, and for the best interest of the trust estate.

Fiduciaries will not be excused on the ground that the instrument creating the trust and making them trustees has given them broad authority and unlimited discretion in the administration of the trust.

The trustee cannot take advantage of liberal provisions of a trust

instrument to relieve him from the legal responsibility of a fiduciary, under the law. Roberts v. Michigan Trust Co., 273 Mich. 91, 262 N. W. 744; In re Will of Sibert, 216 Iowa 336, 249 N. W. 196. In re Estate of Binder, 137 Oh St supra, 43. Willis, Admr., v. Braucher, Gdn., 79 Oh St 290, 87 N. E. 185.

We reach the conclusion that the sale of the shares to William C. Cook and Associates, as authorized by the Probate Court, is not in accordance with the terms of the decedent's Will and is contrary to established principles of law.

We, therefore, find the assignments of error of the defendant-appellant, William Saxbe, Attorney General of Ohio, well taken and those assignments are sustained.

Appeal in number 5764 was taken by the Attorney General from order overruling motion for rehearing entered July 22, 1957. Appeal number 5764 is dismissed for the reason that the order of July 22, 1957, is not a final order.

We determine that plaintiff, Alex S. Dombey, dismissed his petition for a declaratory judgment and answer to cross-petition of the defendants as executors and was thereafter not a party in the proceedings; that plaintiff failed to sustain alleged agreement with counsel for the executors; and that as agent for an unsuccessful bidder for the shares of the Brunson Bank and The Brunson Savings & Loan Company, the plaintiff is not a party aggrieved in this cause. Apple v. Ganson, 49 Abs 547 at p. 550, 76 N. E. 2d 736. Siegfried v. Railroad Co., 50 Oh St 294, 297.

Appeal number 5754 by plaintiff-appellant and the assignments of error filed by plaintiff-appellee in appeal number 5753 are dismissed.

Bill of Exceptions, Volume II, is not properly filed herein and, therefore, the transcript of the evidence so designated is stricken.

The judgment of the Probate Court is reversed, cause remanded with instructions to that court to enter an order requiring defendants as executors of the estate of William Rindsfoos, deceased, to consummate a sale of the shares of The Brunson Bank & Trust Company and The Brunson Savings & Loan Company, held by said executors in said estate to Approved Finance, Inc., Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company for the price of $1,250,500.00.

The costs on this appeal shall be assessed and divided equally between the plaintiff, Alex S. Dombey, the defendants as executors of said estate and the State of Ohio.

Journal entry shall be prepared accordingly for approval by counsel and this Court.

Judgment reversed, cause remanded with instructions.

FESS and HORNBECK, JJ, concur.