UNION COMMERCE BANK, EXECUTOR, *v.* KUSSE ET AL.

[Cite as Union Commerce Bank v. Kusse, 21 Ohio Misc. 217.]

218

(No. 738736—Decided October 29, 1969.)

Probate Division, Common Pleas Court of Cuyahoga County.

*Mr. John H. Bever,* for plaintiff.
*Mr. Andrew J. McLandrich, Mr. Samuel V. Sonenfield,* and *Mr. Gerald F. Sweeney,* for trustee for suit.

ANDREWS, Chief Referee. The Union Commerce Bank, as executor of the estate of Isaac J. Kusse, brings this action for a declaratory judgment and construction of the second codicil to Mr. Kusse's will, as it relates to certain powers and responsibilities of the bank as executor and also as trustee under the will.

More especially, plaintiff asks the court to answer seven specific questions and any other pertinent questions occurring to the court or presented by any of the parties to the action.

Defendants are the widow, an incompetent, represented by a duly appointed trustee for suit, and testator's three adult children.

Mr. Kusse executed his will on April 8, 1960; a first codicil on October 25, 1962; and a second codicil on June 8, 1963. He died on July 1, 1968. The second codicil was not found, but a conformed copy was admitted to probate.

Since the questions raised in the petition relate to the powers and responsibilities of the executor and trustee, a detailed recital of the dispositive provisions of the will is unnecessary.

Suffice it to say that by Item II of his will, as amended by the first codicil, Mr. Kusse divides his residuary estate into two parts. The first part creates a marital deduction trust and names the Union Commerce Bank as trustee.

The other part goes directly to the testator's living issue, except as to part of one share, which is to be held in trust for a grandson by his father. The executor is directed, in so far as possible, to distribute to Willard Kusse, a son, as part of his share, all of the testator's common stock of the Westview Greenhouse Company.

The questions raised by the petition arise from items III and VI of the will, and the effect upon them of the second codicil.

By item III(a) the trustee is given power to "hold, manage, sell, exchange, dispose of * * * any part of the trust estate."

By the same section, the trustee is given the power "to invest and reinvest in any kind of real or personal property," without regard to statutory or judicial restrictions imposed upon fiduciaries.

The trustee is also given power to retain any property coming to it, including its own stock, "without liability for depreciation in value."

Item III(b) gives the trustee the power to continue to hold any stock owned by the testator at his death in any closely-held corporation.

Item VI(a), dealing with the Union Commerce Bank as executor, grants it the power to exchange, invest, and

reinvest in any kind of property, without regard to investment restriction. Item VI(b) grants the executor power to sell and convey all or any part of the testator's estate, and item VI(j) provides that the "authorities" vested in the executor may be exercised without applying to any court for leave or confirmation.

It is obvious from the above provisions of the will that both the executor and the trustee are granted the authority to sell any part of the estate. In the case of the trustee, however, that authority is subjected by item IV to the approval of a named trust advisor.

Item I of the second codicil contains the following:

"Notwithstanding any other provision of my Last Will and Testament and the First Codicil thereto, I direct that neither my Executor nor my Trustee, in the event that any of the trusts provided for in said Will and First Codicil shall be established, shall sell any of the securities which may be part of my estate or of said trusts, unless it shall be necessary in making division or distribution to avoid distribution of fractions of shares."

Immediately after the above sentence comes a paragraph by which the testator republishes, ratifies, and confirms his will and first codicil, "in all respects except as modified by this Second Codicil."

Most of the questions propounded by the plaintiff are concerned with the effect of this codicil upon the power of sale granted in the will, and the meaning of the word "securities," as used in the codicil.

*Question 1.* "What effect does the lost second codicil have on the investment in U. S. Treasury Bills during the administration of said estate?"

*Answer.*

Assuming that the second codicil precludes the executor from selling "securities," it is my conclusion that such a prohibition has no effect upon the investment in United States Treasury Bills during the administration of the estate.

The Treasury Bills in the estate at the time of Mr. Kusse's death matured in the late fall of 1968, and are un-

doubtedly long gone, and, as will be pointed out in my answer to question 5, the prohibition is limited to securities which were a part of the estate at the testator's death.

There is nothing in the second codicil preventing investment in further United States Treasury Bills.

*Question 2.* "Are the various savings accounts listed in exhibit B securities as that term of reference is used in the lost Second Codicil and if so does the limitation of sale stated therein restrict the executor from using these deposits for administration expenses and other obligations of said estate?"

*Answer.*

The savings accounts listed in exhibit B are *not* securities as that term of reference is used in the second codicil. It is inconceivable that the testator could have intended the withdrawal of funds from a bank to be regarded as the sale of a security. The two transactions are entirely different. The point is so obvious that I will not dwell upon it, nor will I discuss items III(d) and (h), which tend to confirm this conclusion.

*Question 3.* "Does the Lost Second Codicil nullify Sections 2109.37 and 2109.371, Revised Code, as said sections pertain to the restriction on savings account deposits over the insured limit of $15,000 as provided by the Federal Deposit Insurance Corporation?"

*Answer.*

Inasmuch as savings accounts are not "securities" within the meaning of the second codicil, it is apparent that there is nothing in the second codicil to prevent the executor or trustee from withdrawing a sufficient sum from any of the savings accounts to reduce the account to the $15,000 maximum.

Whether the executor or trustee is obligated so to reduce the accounts is not asked in the specific questions, but plaintiff requests directions from me regarding the rights and obligations of the executor and trustee with regard not only to the savings accounts but also to the other property of the estate. This matter will be discussed after the specific questions have been answered.

*Question 4.* "Does the Lost Second Codicil preclude the executor from using U. S. Treasury Bonds in the payment of Federal Estate Taxes due and owing on said estate?"

*Answer.*

No, the second codicil does not preclude the executor from the use of such bonds for the purpose designated. Using these bonds to pay taxes is not selling them.

*Question 5.* "Does the lost Second Codicil preclude the executor or trustee, Union Commerce Bank, from selling securities in said estate or trust, in the event a trust shall be established, for reasons other than to avoid distribution of fraction of shares?"

Oddly enough, question 7 asks the same thing, although in slightly different language and with express reference to items III and VI. Hence, the answer to question 5 is also the answer to question 7.

*Answer.*

The second codicil does preclude the executor and trustee from selling securities in the estate or trust without authorization or approval by this court. However, the prohibition against selling securities is limited to those securities which Mr. Kusse owned at the time of his death.

Although as already noted, items III and VI clearly give the trustee and executor power of sale, the second codicil as clearly takes it away. In this codicil the testator directs that notwithstanding any other provision in his will and first codicil, "neither my executor nor my trustee * * * shall sell any of the securities * * *."

In this context the word "direct" is not a mere recommendation, as contended by counsel. It is an order.

To prohibit a fiduciary from selling estate securities without court authoriziaton is not contrary to public policy. In fact, it is fundamental that if a trust instrument expressly forbids the fiduciary to sell trust property, he has no power of sale and must seek permission from the court. 3 Scott, Trusts (3rd ed.) Sections 190, 190.1; 54 Ohio Jurisprudence 2d, Trusts, Section 180; and see Section 2113.39, Revised Code.

It is equally fundamental that despite the express prohibition against selling, a court may authorize the fiduciary to sell. 3 Scott, Trusts 3d ed., Section 190.4; 1 Restatement, Trusts 2d, Section 167, Comments *a* and *c*; *id.* Section 190, Comment *f*; and see Section 2113.40, Revised Code.

Items III(a) and VI(a) give the trustee and executor, respectively, the power to invest and reinvest, and the second codicil ratifies the will in all respects except as therein modified. This, plus a close reading of the second codicil, leads me to the conclusion that the prohibition against selling is confined to the securities in the estate at the time of the testator's death. For some reason the testator evidently wanted the securities in which he had invested to pass to his beneficiaries in so far as this was possible.

*Question 6.* "If the answer to question 5 (erroneously typed as question 4 in the petition) is *yes,* is the executor or trustee, Union Commerce Bank, relieved from any and all liability for holding said securities?"

*Answer.*

Inasmuch as this question refers back to question 5, I assume that plaintiff is asking whether the fact that the executor and trustee are precluded from selling securities relieves them from liability for holding the securities.

The answer to that question is definitely "no." Even though a fiduciary is without power of sale, he is still not relieved from his duty to manage the estate with due care and prudence. If the circumstances are such that it becomes imprudent to retain a certain security or other item of property, the fiduciary must apply to the court for permission to sell it. 3 Scott, Trusts 3rd ed., Section 230.1, page 1869; 1 Restatement, Trusts 2d, Section 167, Comment *g* and Illustration 24; see also *Guthrie* v. *Cincinnati Gas & Electric Co.,* 2 Ohio N. P. (N. S.) 117, 15 Ohio Dec. (N. P.) 23 (Super. Ct. of Cincinnati 1904).

And in an emergency, or what the fiduciary reasonably believes to be an emergency, if he has no opportunity to apply to the court, he may sell the security without first

obtaining the court's permission, although his action is subject to the court's later approval. 1 Restatement, Trusts 2d, Section 167(2) and Comment e.

Although the specific questions in the petition have now been answered, Union Commerce Bank has asked me to instruct it about its rights and obligations in connection with the retention of investments coming to it as executor and trustee.

This request for general information is not a subject of controversy and therefore does not come within the scope of a declaratory judgment action. Borchard, Declaratory Judgments, 2d ed. 76-78. Instead, it resembles a request for an advisory opinion. However, judicial power is sometimes exercised in an *ex parte* manner, and without controversy, upon a fiduciary's petition to the court for instructions or directions. *Id.* at 78.

The request by plaintiff is of this nature. The direction, when given, is not merely advisory, but is binding. *Id.* at 78, note 98. For this reason the court must be careful not to prejudice the rights of the other parties to the action, who actually are taking no part in this phase of the proceedings.

Questions relating to the retention of investments coming to a fiduciary at the beginning of his service start with the common-law rule that where the fiduciary receives securities which are not proper trust investments (often called "nonlegals"), it is his duty to dispose of them within a reasonable time. 3 Scott, Trusts 3d ed., Section 230, page 1863; 16 U. of Cincinnati L. Rev. 63 at 69 (1942).

Statutes or provisions in wills or trust instruments authorizing the fiduciary to retain any property coming to him relieve the fiduciary of this common-law duty. But they do not relieve him of his duty to exercise due care and prudence with reference to the retention or disposal of such property. 3 Scott, Trusts 3d ed., Section 230, page 1867, and Section 230.1, page 1869; 23 Ohio Jurisprudence 2d, Fiduciaries, Sections 38, 48, 72; 47 A. L. R. 2d 187, Sections 14 and 21. See also, the proviso in the Ohio "retention" statute, Section 2109.38, Revised Code, and the

comment in Freifield, Investments by Fiduciaries Under the New Probate Code, 5 U. of Cincinnati L. Rev. 429 at 437 (1931).

As already indicated, Mr. Kusse's will grants to his executor and trustee the power to invest in any property without regard to statutory or judicial restrictions. Consequently, no investments made by either fiduciary can be classed as nonlegals, and the same is true of the property originally coming to the fiduciary. 3 Scott, Trusts 3d ed. Section 230.1, page 1870.

But even the unlimited investment authority given in Mr. Kusse's will does not relieve the fiduciary from the obligation of due care and prudence. *E. g. Scott* v. *Trustees of Marion Township* (1883), 39 Ohio St. 153; *Dombey* v. *Rindsfoos* (1958), 105 Ohio App. 335; see 3 Scott, Trusts 3d ed., Sections 227, 227.12, 227.14; 23 Ohio Jurisprudence 2d, Fiduciaries, Section 32.

Presumably the plaintiff does not need instruction in the content of the "prudent man" rule. It is well stated in the proviso in Section 2109.371, Revised Code, and in 2 Scott, Trusts 3d ed., Section 174, and 3 Scott, Trusts 3d ed., Section 227.

When the fiduciary is a corporate executor and trustee, with greater skill and facilities for handling trust estates than those possessed by the "ordinary prudent man," such fiduciary is held to a higher degree of care, consonant with its greater skill and facilities. 1 Restatement, Trusts 2d, Section 227, Comment *d*; 2 Scott, Trusts 3d ed., Section 174, pages 1410-1411; *id.* Section 174.1. The principle has been recognized in Ohio, at least by dicta. *In re Estate of Sedgwick* (1944), 74 Ohio App. 444, motion to certify overruled, Jan. 17, 1945; *Freeman* v. *Norwalk Cemetery Assn.* (1950), 88 Ohio App. 446. As stated by a New Jersey court, after an excellent discussion of the matter:

"It was under a duty to exercise a skill greater than that of an ordinary man. The manner in which investments were handled must be viewed and assayed in the light of such superior skill and ability. *Liberty Title & Trust Co.* v. *Plews* (Ch. 1948), 142 N. J. Eq. 493, 60 A. 2d 630, 642.

Without taking into account the exculpatory clause in item III(a), which will be touched upon subsequently, it is clear that, both as executor and as trustee, Union Commerce Bank is bound to exercise due care, as explained above, in connection with the retention or disposal of estate or trust property.

Referring especially to the savings accounts in excess of the $15,000 limit, the fiduciary is not bound to reduce them upon any theory that the excess constitutes a nonlegal, for, as we have seen, there are no nonlegals in this estate. Instead, the fiduciary's obligation to maintain or reduce the accounts depends upon the due care principle.

After giving the trustee the power to retain any property coming to it, item III(a) continues:

"without liability for depreciation in value;"

No such clause appears in item VI, dealing with the executor.

After a great deal of research and deliberation, I have concluded that it would be inadvisable under the present circumstances to give an opinion on the validity, meaning, and effect of the above exculpatory clause. In the absence of clear-cut and binding authority settling the points involved, a matter of this complexity and far-reaching importance should not be determined upon the mere request of the fiduciary for *general advice* about its liabilities, and without complete and thorough argument by both sides, directed to the exact issues.

*Judgment accordingly.*